## PLIMPTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3814.

Circuit Court of Appeals, First Circuit.

May 5, 1943.

Guy Newhall, of Lynn, Mass., and Francis G. Goodale and Faneuil Adams, both of Boston, Mass., for petitioner.

Samuel H. Levy, Samuel O. Clark, Jr., Sewall Key, Joseph M. Jones, J. P. Wenchel, and John W. Smith, all of Washington. D. C., for Commissioner of Internal Revenue.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals, now the Tax Court of the United States, sustaining the Commissioner's determination of a deficiency in the petitioner's income tax for the calendar year 1937.

The only question presented is as to the amount of taxable income which the petitioner received from a trust created on December 31, 1931, of which he was both a trustee and a beneficiary. The events leading up to the creation of this trust are important and will have to be considered in some detail.

On February 16, 1923, Herbert M. Plimpton, the petitioner herein, conveyed certain undisclosed property to himself and the First National Bank of Boston as trustees. The beneficiaries of this trust were the petitioner's sister, Caroline P. Adams, his wife, Frances, and his two sons, Hollis and George. The sister Caroline was given an annuity of $150 per month for her life, the balance of the income, after paying this annuity, being payable quarter-annually, or oftener if requested, in equal shares to Frances, Hollis and George. The trust instrument then went on to provide: "Upon the decease of the said Mrs. Frances W. Plimpton the income which would have been payable to her if living shall be paid the said sons of the Trustor in equal shares or to the issue of any deceased son per stirpes. Upon the decease of either son leaving issue, said issue shall receive, in equal shares, the income which would have been paid to said deceased son if living. If either son should decease without issue, the Trustor's wife and surviving son, or the survivor of them, shall receive the income which would have been paid to said deceased son if living."

With respect to principal the trust instrument provided:

"Upon the decease of the Trustor's wife, unless payment is deferred by the Trustor, the principal of the said Trust Fund shall be distributed to the said sons of the Trustor as called for by them, but each of the said sons or their issue by right of representation shall share equally in said Trust Fund and any advancements to either shall reduce proportionately his further interest in the income and/or principal of said fund.

"That part of the share of either son which has not been withdrawn by him during his lifetime shall be distributed as provided in his will or in default of any will shall be distributed to his issue in equal shares and if said son shall leave no issue and no will then said remainder shall be paid to his administrator."

This trust was not limited to run for any set period of time but the petitioner reserved the right to revoke, alter and amend it, in whole or in part, at any time during his lifetime. On March 1, 1924, the petitioner executed an instrument whereby he amended the trust in a respect not here material and then waived his "right to further revoke, alter and/or amend the said instrument, so that the provisions of the said trust agreement cannot be revoked, altered or amended in any particular by me or by any one acting under my authority between the date of

this instrument and January 1, 1928, provided, however, that at any time before January 1, 1928 the said trust, as above amended, can be further continued, without alteration, for one or more years from that date."

On December 22, 1927, he further continued the trust as follows: "Whereas, by an amendment dated March 1, 1924 to the trust agreement above referred to the said trust was made irrevocable until January 1, 1928, with the provision that at any time before that date the said Trust Fund could be further continued without alteration for one or more years from that date, I now hereby provide that the said Trust Fund shall be continued without alteration until January 1, 1930, with the further provision that at any time before that date the said Trust Fund may be further continued without alteration for one or more years from that date."

The petitioner's son George died intestate and without issue on March 22, 1928, and in November of that year his sister Caroline, the annuitant, died also. Petitioner's wife Frances died intestate on May 30, 1929. On December 17, 1929, the petitioner again extended the trust agreement, this time to January 1, 1932, in language substantially similar to that employed by him in the extension of December 22, 1927.

The Board found that this trust was terminated and the one of December 31, 1931, (the one with which we are here directly concerned) was set up under the following circumstances:

"On several occasions during 1930 and 1931 petitioner and his son, Hollis W. Plimpton, and their attorney discussed the status of the property then being held by the First National Bank and the petitioner as trustees under the trust agreement of February 16, 1923. They were all of the opinion that the trust had terminated upon the death of petitioner's wife on May 30, 1929, and that the entire trust property then passed to Hollis and remained in his ownership. Believing the property to be his own and wishing to keep it separate from his other property, and also wishing to share the income therefrom with his father, Hollis executed a trust agreement dated December 31, 1931, by which he undertook as 'trustor' to transfer all of these assets to the Old Colony Trust Co. and the petitioner as trustees for the benefit of petitioner and Hollis and others named therein."

In this second trust agreement provision was first made for the payment of an annuity of $100 per month to the petitioner's brother, J. Edward Plimpton, for life, and then it was provided that the balance of the net income could, in the discretion of the trustees, be either distributed one-half to Herbert and one-half to Hollis; or else accumulated and added to principal. Herbert was given no interest in the principal. Its ultimate disposition is not material here.

In this agreement the right to alter or amend at any time and as to "any and all matters" was reserved to Hollis except that—" * * * any amendments and changes in reference to beneficiaries, amounts and time of payments shall be to Herbert M. Plimpton and to and among the children of said Hollis W. Plimpton and their issue, but said Hollis W. Plimpton shall not have the right to cancel and revoke or amend the same in any way for his own personal benefit, and in such respect the same is irrevocable."

Although it appears that Hollis signed this trust instrument as grantor the Board found that "The petitioner himself suggested the terms of the 1931 trust agreement and signed the agreement with the notation 'Assented to'." It also appears and the Board found that "On the same date, December 31, 1931, Hollis wrote a letter to the First National Bank, trustee of the 1923 trust, directing the transfer of the assets of the old trust to the Old Colony Trust Co. as trustee of the new trust. The transfer of the assets from the First National Bank to Old Colony Trust Co. was completed prior to March 31, 1932."

For the calendar year 1937 the net income of the trust in excess of the annuity was over forty-five thousand dollars. But the petitioner in his individual income tax return for that year reported less than ten thousand dollars as his taxable share of that income—the amount which he reported being the amount of trust income actually distributed to him by the trustees during that year. The Commissioner, however, added to the income reported the difference between one-half the income of the trust in excess of the annuity and the amount which the petitioner had actually received and determined a deficiency ac-

cordingly. In his deficiency notice he stated as the basis for his determination that: "You are regarded as the grantor of one-half of the assets contributed to the trust fund established December 31, 1931 by deed of Hollis W. Plimpton and, therefore, taxable on one-half of the income of trust in excess of the fixed amount of $1,200.00, payable to J. Edward Plimpton, in accordance with the provisions of sections 22(a) and 167 of the Revenue Act of 1936 [26 U.S.C.A. Int.Rev.Acts, pages 825, 895]."

The Board upheld the Commissioner but did so upon another section of the statute—§ 162, 26 U.S.C.A. Int.Rev.Acts, page 893—which so far as here material reads: "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—* * * (b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. * * *"

The Board stated its reasons for concluding that this section of the statute applied as follows:

"The evidence all indicates that petitioner's co-trustee, the Old Colony Trust Co., was perfectly amenable to petitioner's wishes in the administration of the trust fund and would have consented readily to petitioner's payment to himself of one-half of the balance of the net income of the trust. This was a 'family trust' of the clearest type. It was controlled entirely by petitioner and his son Hollis. There was no difference of opinion whatever among the trustees and beneficiaries. Actually there was (sic) no active discretionary duties resting upon the trustees or either of them. The corporate trustee would not have violated any fiduciary duty in consenting to petitioner's withdrawal of his half of the remainder of the net income of the trust. We think that such one-half portion of the trust income was distributable to petitioner and is therefore taxable to him under the provisions of section 162(b) of the 1936 Act."

We do not agree with the conclusion reached by the Board.

The trust agreement of 1931 does not direct the periodic distribution of the net income of the trust by the fiduciaries, one-half to the petitioner and one-half to the petitioner's son Hollis. Instead it provides that "The balance of the net income in the discretion of the Trustees hereunder may be either distributed" as above "or accumulated and added to the principal." The trust created is a discretionary, not a distributable one, and in the section of the statute under consideration it seems to us clear that Congress intended to differentiate for purposes of taxation between income of a trust which may, and income of a trust which must, be distributed to the beneficiaries.

In § 161, the first section of the part of the statute covering the income tax liability of estates and trusts, it is provided that the taxes imposed upon the income of individuals shall be imposed upon the income of estates and trusts including income of four categories. The second of these categories is "Income which is to be distributed currently by the fiduciary to the beneficiaries", and the fourth is "Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated." That is to say, income which is to be distributed currently is contrasted with income which may be either distributed or accumulated in discretion. And this contrast is again drawn in § 162, the section dealing with the incidence of the tax imposed upon the income of a fiduciary. As we have seen, subdivision (b) of this section allows the fiduciary to deduct income of the second class above, it being taxable to the beneficiaries whether distributed to them or not, but by subdivision (c) of the section only so much of the income of the fourth class as is properly paid or credited to the beneficiary may be deducted by the fiduciary, and only the amount so deducted is required to be included in the beneficiary's return. Thus the statute taxes income which is to be distributed currently, whether actually distributed or not, to the beneficiaries, but taxes income to the fiduciary which may in his discretion be either distributed or accumulated, excepting only such part thereof as may have been actually distributed in any year, which part it taxes to the beneficiaries. The scheme of the statute is to allow deductions to a

fiduciary as to income which he is under an absolute obligation to pay to a beneficiary, whether he has in fact done so or not, and to tax such income to the beneficiary, but, by a similar technique of deduction, not to tax income to a beneficiary which he is not entitled to receive as of right until such income has been actually received. To effectuate this statutory scheme, income of a trust which is to be distributed currently by the fiduciary to the beneficiary must be construed to mean income which by direction of the trust instrument must be paid or credited periodically to the beneficiaries. This is the conclusion reached by the United States Circuit Court of Appeals for the Second Circuit, (Commissioner v. Stearns, 2 Cir., 65 F.2d 371, 373, certiorari denied 290 U.S. 670, 54 S.Ct. 90, 78 L.Ed. 579; Commissioner v. First Trust & Deposit Co., 2 Cir., 118 F.2d 449, 452), as well as by the Board of Tax Appeals itself (Dorothy McBride Orthwein v. Commissioner, 45 B.T.A. 184, 187; Mary Pyne Filley v. Commissioner, 45 B.T.A. 826, 830) and we see no reason to disagree. See also 6 Mertens, Law of Federal Income Taxation, § 36.40.

But the petitioner here was one of the trustees as well as a beneficiary and the Board has found that his co-trustee, the Old Colony Trust Co., was amenable to his wishes and would have readily acceded to any request which the petitioner might make with respect to the payment to himself of one-half the balance of the net income of the trust. From this the Board concluded that the petitioner had, as a practical matter, the sole right to say whether his half of the income should be accumulated or distributed and, on the basis of this conclusion, decided that half of the income was in effect income currently distributable to the petitioner.

We do not wish to be understood as expressing any opinion on the situation which would be presented if the petitioner were the sole trustee, but we cannot agree that a beneficiary of a discretionary trust, who is only one of several trustees, is taxable as though the trust were a distributable one merely because the other trustees are complacent. Although Congress might have provided that the extent of the taxability of a beneficiary of a discretionary trust should depend upon his practical control over the trustee, it seems to us from what we have said above that Congress has not done so but instead preferred to base the incidence of the tax upon the firmer ground of the wording of the trust instrument itself, distinguishing between distributable and discretionary trusts. This seems to us the obvious conclusion to be drawn from the words used and this conclusion is buttressed by the practical problems which would arise if the Board's view received the sanction of the courts. If the touchstone with which to determine whether a beneficiary of a discretionary trust is taxable on all that might have been given to him in any year or only on what he actually received in that year is the practical control which he may have over the trustee, then the fact that a beneficiary is also one of the trustees becomes irrelevant, and the Commissioner would have to investigate all the pertinent facts of every discretionary trust to determine whether or not any beneficiary could, as a practical matter, control the discretion of the trustees, or a majority of them. Obviously any such investigation to be complete would have to cover a great many matters including relative force of character, business, social and family relationships and possibly others, and such investigations would have to be made every year because not only may trustees change but also relationships between the same trustees and beneficiaries may change with the passage of time. It seems to us that if Congress had intended to impose the heavy administrative burden of making such sweeping investigations into the factual backgrounds of all discretionary trusts it would have done so in clear and explicit language. In the absence of such language we cannot infer such an intention.

 Nor do we think that the petitioner can properly be taxed on one-half of the net income of the trust in excess of the annuity under § 22(a) as interpreted by the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. From the facts stated earlier in this opinion it is abundantly plain that this is not a case in which the taxpayer as grantor of a trust has parted with only apparent dominion and control over the corpus of the trust while he in fact has "retained the substance of full enjoyment of all the rights which previously he had in the property." Helvering v. Clifford, supra, 309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788. In 1923 Herbert, the petitioner, created a trust, primarily for the benefit of his wife and two sons, and a few

months thereafter he waived, for a limited period of time, the right to revoke, alter or amend it. Thereafter he twice provided that it should be continued without alteration for limited periods of time. These continuances overlapped, so in effect the trust became an irrevocable one, but one of limited duration as far as irrevocability is concerned. But, before the last continuation of the irrevocability clause expired, he came to the conclusion, as the Board found, that the trust had terminated because of deaths in his family and that the entire trust property had passed to his sole surviving son, Hollis. In his belief he surrendered control over the trust property and made no further attempt to manage or control it. Instead he stood by while his son created a new trust, in which the petitioner was named a trustee and a beneficiary, but as to which the son retained the power of amendment, including the power to remove his father as trustee and to cut off his father as beneficiary in favor of his, (the son's) children.[1] The Board found that the father "suggested" the terms of this trust, but it did not find, and it does not anywhere appear in the evidence, that the father went further than this, that is, that he ever did anything more than offer advice which was accepted. We know of no case holding that this nebulous power to control property affords a sufficient basis for imposing a tax upon its income.

The case of Richardson v. Commissioner, 2 Cir., 121 F.2d 1, upon which the government relies, is clearly distinguishable. In that case it was held that the income of a trust created by a wife with funds given to her by her husband was taxable to the husband although he was not the settlor. But the husband there had an unqualified right to revoke the trust and take all the funds himself, including accumulated income, which is not the case here. These features are important and make the Richardson case clearly distinguishable from the one before us.

■■ What we have already said goes far to dispose of the contention that the Commissioner's assessment can be sus-

tained under § 167. Taxability under this section must depend upon a finding that the petitioner was to at least some extent a grantor,[2] but since we find nothing in the evidence to so indicate, there is sufficient basis for us to make a final determination on this point. Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343.

It seems to us that the only reasonable conclusion from the evidence in the record is that at the time the 1931 trust was created the petitioner had parted with all control over the property which went into it.

From the record we must assume, as the Board found, that during the latter part of 1931 the petitioner came to the belief that the property held under the 1923 trust had passed to Hollis and remained in Hollis' ownership. At least, if he did not entertain this belief, his conduct clearly indicates that he either waived whatever rights he may have had in the property, or else made a gift of it to his son. His conduct in permitting his son to deal with the property as his own is consistent with no other interpretation. And there is not a shred of evidence to indicate that he gave up any rights which he may have had in the property upon condition that his son would use it to create a trust for his benefit. Furthermore, the corporate trustee under the first trust acquiesced in Hollis' dealing with the trust res as his own when it, on Hollis' order, transferred the res to the corporate trustee under the second trust. There being nothing to indicate that the petitioner's conduct with respect to the property was colorable only, or that he was attempting to perpetrate any scheme for the evasion or even the avoidance of taxes (see Commissioner v. Bateman, 1 Cir., 127 F.2d 266), we fail to see how the conclusion could in reason be reached on this record that Herbert was a grantor to any extent with respect to the 1931 trust.

The decision of the Board of Tax Appeals is reversed, and the case is remanded to the Board for further proceedings not inconsistent with this opinion.

---

[1] We can construe the son's power of amendment quoted above in no other way than that it permitted the son to substitute his father for his children, or vice versa, in whole or in part as to enjoyment of income.

[2] In view of the Board's conclusion of

taxability under § 162 it expressly made no finding as to "whether the petitioner was the grantor or a co-grantor of the trust or what portion of the trust assets belonged to him or what portion belonged to his son Hollis."