## BUNTING v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10418.

Circuit Court of Appeals, Sixth Circuit.

Nov. 24, 1947.

Walter A. Eversman, of Toledo, Ohio (Walter A. Eversman and Josiah T. Herbert, both of Toledo, Ohio, on the brief; Williams, Eversman & Morgan, of Toledo, Ohio, of counsel), for petitioner.

George A. Stinson, of Washington, D. C., (Sewall Key, Robert N. Anderson and Harry Baum, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Petitioner, Charles E. Bunting, seeks a review of the decision of the Tax Court affirming the action of the Commissioner of Internal Revenue in assessing against him a deficiency in income taxes for the calendar years of 1937, 1938, 1939, 1940 and 1941, in the respective amounts of $26,631.-14, $5774.32, $37,556.93, $52,749.16 and 47,110.00. Petitioner does not controvert the computations of the Commissioner but insists that he is not liable for the taxes. Petitioner filed his tax returns for the years involved upon the cash receipts and disbursement basis.

Petitioner and his brothers, John W. Bunting and William H. Bunting were sons of William and Fannie Bunting. John W. died in 1938 and was survived by his widow and one child. William H. died in 1943 and was survived by his widow and four children.

The Bunting Brass & Bronze Company was organized in 1907 by petitioner's father, William, and two other persons. Petitioner's father afterwards acquired complete ownership of the stock of the corporation and was its President from its organization until 1916. Soon after the corporation was organized the three brothers were employed by it. As the years passed and the father advanced in age, the sons took an increasingly active part in the management of the business and when the father died in 1916, petitioner, the youngest son, was the active head of the company. A short while before his death, petitioner's father owned the entire capital stock of the corporation, consisting of 1000 shares. He gave 40 shares to his wife, Fannie, and 70 shares each to his three sons, John, William and petitioner, Charles. Petitioner's father died in 1916, leaving a will by the terms of which he bequeathed the remaining 750 shares as follows: 160 shares to petitioner's two brothers, and 225 shares each to petitioner and his mother. But the will provided that all of these shares should be held in trust by petitioner and his mother as trustees for 15 years unless sooner terminated by the trustees, with the direction that the trustees control and vote his stock "as in their judg-

ment the interests of said company shall demand. * * *"

Petitioner's brothers objected to petitioner having control over the stock bequeathed to them and thereupon petitioner and his mother, as trustees, terminated the trust and transferred the shares to the beneficiaries designated in the will. Thereafter petitioner and his mother, owners of the majority of the corporation's stock, controlled its management. On January 18, 1924, petitioner's mother created a trust in which the Toledo Trust Company was designated as trustee and to which she transfered all of the shares of the corporation which she then owned.

Article I of the 1924 trust granted to the trustee the power to invest the income and profit of the trust property "in such securities as donor's son, Charles E. Bunting, may direct in writing," to enter into any reorganization negotiations, "subject, however, to written directions by donor's son, Charles E. Bunting, with respect thereto." It granted to the trustee the power to make sales of the property "but in case any sale was made during petitioner's life the proceeds were to be reinvested in accordance with his directions." Further, the trust provided that the trustee should give to the petitioner during his lifetime authority to vote all of the stock of the corporation, and that petitioner "shall alone be responsible for the operation of said The Bunting Brass & Bronze Company, in so far as such stock is concerned." Further, "so long as the donor's son, Charles, should live, the income of the trust was to be reinvested pursuant to the direction of the petitioner."

Article IV of the 1924 trust is as follows: "Section 1. The Trustee shall dispose of the Trust Property, or any portion thereof, from time to time, and in all respects invest and handle same in accordance with provisions of Article I, Section 1, of this agreement and/or any written directions given by Donor's son, Charles E. Bunting, may withdraw all or any part of said Trust Property by written directions to Trustee. The Trustee shall not be liable for anything done in accordance with instructions of Donor's son, Charles E. Bunting. Should said Charles E. Bunting, withdraw all of the Trust Property, this Trust shall thereafter be considered as terminated unless Donor's son, Charles E. Bunting, otherwise directs in writing to Trustee."

On January 2, 1929, Fannie Bunting and petitioner, in a letter addressed to the Toledo Trust Company, Trustee, terminated the 1924 trust. The letter is as follows:

"Gentlemen:

"Referring to a certain Indenture of Trust dated January 18, 1924, and made and executed by and between Fannie E. Bunting and The Toledo Trust Company, as Trustee, which Indenture and the trusts thereby created are known and designated in your files as 'Trust No. 50,' the undersigned Charles E. Bunting, acting pursuant to the power and authority granted and conferred upon him by the terms of Article IV of said Indenture of Trust, does herewith withdraw all of the property, both principal and income, now held by you as Trustee under said Indenture and of the trusts thereby created.

"The undersigned Charles E. Bunting does herewith, simultaneously with the withdrawal of said property as aforesaid, convey, transfer, assign and set over all of said property to the undersigned Fannie Bunting, and the undersigned has simultaneously herewith delivered all of said property to the undersigned Fannie Bunting.

"The undersigned Fannie Bunting, simultaneously herewith and as a part of this transaction, does hereby convey, transfer, assign and set over all of said property so withdrawn and so delivered to her, to The Toledo Trust Company, to be held by said The Toledo Trust Company, as Trustee, upon and subject to the uses and trusts set forth and declared in the Agreement of Trust attached hereto of even date herewith and executed simultaneously herewith, between the undersigned Fannie Bunting and The Toledo Trust Company, as Trustee, and the undersigned Fannie Bunting has simultaneously herewith delivered all of said property to said The Toledo Trust Company to be held upon the uses and trust set forth in said agreement attached hereto.

"The undersigned Fannie Bunting does further release and discharge you from

any and all liability and any and all rights or claims which she has or might have against you as Trustee of said Trust No. 50, except in connection with the execution of the directions herein contained.

"Yours very truly,
"Charles E. Bunting (signed)
"Fannie Bunting (signed)."

On the same date Fannie Bunting executed another instrument creating a trust known as "No. 50" in which the Toledo Trust Company was again named as trustee. This new trust conveyed to the trustee all of the property held in the 1924 trust and is the trust the income of which is here involved. This trust consisted of 2385 shares of the stock of the Bunting Brass & Bronze Company, about $70,000.00 worth of miscellaneous securities, and about $4820.00 in cash.

Article II of the 1929 trust provided:

"Powers of Donor's Son, Charles E. Bunting.

"Notwithstanding any other provision herein contained the Donor's son, Charles E. Bunting, may at any time or from time to time during his lifetime (either before or after the death of the Donor), without the consent or approval or joinder of the Donor or of any beneficiary hereof or the consent or approval of any court or other authority, by the delivery of a written order to the Trustee, (a) modify, amend or add to this agreement in any respect whatsoever, including the right to change the beneficiaries hereunder, their shares and the plan of distribution to each, and to appoint himself as beneficiary hereof, provided, however, that the duties, powers and liabilities of the Trustee shall not be substantially changed without its prior written consent, (b) withdraw any of the trust property from the operation of this agreement whereupon such property shall be paid and delivered over to the Donor's said son, or (c) revoke this agreement in its entirety, whereupon the entire property then held in trust shall be paid and delivered over to the Donor's said son and this trust shall thereupon terminate; and the Donor's said son shall be under no duty or obligation to account to the Donor or the Trustee or any beneficiary

hereunder or to any court or other authority for the application of the trust property so received by him upon the exercise of such power of withdrawal or revocation or by appointment as such beneficiary, but the same shall be his absolutely."

By Article III the trustee was given certain general powers except such as were conferred upon petitioner, to be exercised during his lifetime and subject to the control and directions of petitioner. The trustee was given discretion with reference to holding the securities delivered to it or thereafter added to it, without accounting for loss except with respect to the shares of stock or other securities of the company or its successor. The trustee was directed to retain during the lifetime of petitioner, subject to the provisions of the trust, all shares of stock of the corporation then delivered or thereafter acquired in their present form or the shares of stock for which such shares should be exchanged at the direction of petitioner as the result of any reorganization, consolidation or merger. The trust provided that during the life of petitioner said shares of stock shall not be sold or re-exchanged except on written instructions from petitioner. The trustee was authorized and empowered to vote the stock or other securities of the corporation subject to the control and written direction of petitioner. It was required to keep adequate books of account of all property constituting the trust property and of all receipts and disbursements which should at all times be open to inspection and examination of the donor during her lifetime and of petitioner during his lifetime, and should furnish the donor during her lifetime and petitioner during his lifetime and thereafter to the corporation or its successor, at least annually, an accurate statement showing the property constituting the trust property and the income therefrom.

Petitioner's mother, with whom he lived, died in 1938.

By Article IV it was provided that after the death of petitioner and during his life the net income should be disposed of in accordance with the written directions of petitioner at any time or from time to time,

subject to the exercise of the powers conferred upon petitioner.

By Article VII it was provided that the trustee might be removed at any time by written notice from the petitioner.

Pursuant to the powers vested in him by Article II petitioner on July 12, 1940, amended the trust agreement by striking Article V therefrom and substituting another Article V which provided for the distribution of trust property after his death and · which changed the interests of the beneficiaries from those provided in the original instrument. Again, the petitioner on July 12, 1941, amended Article V by changing the interests of the beneficiaries after his death and providing for the distribution of the trust property to designated persons. At no time since the creation of the first trust has there been any distribution of income or principal to petitioner or any other person from either trust here involved.

The Tax Court decided that the income from trust No. 50 created January 2, 1929, was taxable to the petitioner under the provisions of Sec. 22(a) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 22 (a). Petitioner challenges the decision upon several grounds, to wit: (1) that he was neither the settlor nor the trustee of trust No. 50 but was merely the donee of a power to alter, amend or revoke the trust; (2) that the primary purpose of the creation of trust No. 50 was to provide for the continuity of the company and its successful management, that he neither exercised his power to alter, amend or revoke the trust nor has ever realized or received any income from the 1924 trust or trust No. 50, and that under Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, the "taxable event" is the realization of income.

 It is not determinative that petitioner was not the donor and has received no income from either the 1924 or 1929 trusts. The material question is, whether the income upon which it is sought to tax him was subject to his "unfettered command" and whether he was free "to enjoy it at his own option." If so, such income is taxable to him whether he saw fit to enjoy it or not. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. It cannot be controverted that Article II heretofore quoted of the 1929 trust No. 50 does place the income from the trust under the "unfettered command" of petitioner. He could by written order to the trustee (1) modify, amend or add to the trust "in any respect whatsoever"; (2) he had the right to change the beneficiaries, their shares and the plan of distribution to each; (3) the right to appoint himself as beneficiary; (4) the right to withdraw any of the trust property from the operation of the trust agreement whereupon the property must be paid and delivered to him; (5) the right to revoke the agreement in its entirety, whereupon the trust property must be paid and delivered to him and the trust terminated; and upon the exercise of such powers of withdrawal or revocation or by appointment of himself as beneficiary, he was under no obligation to account to the donor or to the trustee· or any beneficiary or any court or other authority for the application of the trust property so received by him and the trust property should become petitioner's absolutely.

The case is substantially on all fours with Emery v. Commissioner, 1 Cir., 156 F.2d 728, 730. The Emery case presented the question whether the beneficiary of a trust is taxable for the income therefrom under Sec. 22(a) when she had the power to revoke, alter or amend the trust. The court said: "We see no reason why the principles and logic of the Corliss case do not apply to the case at bar. We cannot see any valid reason for distinguishing between a settlor who reserves broad powers over a trust and a beneficiary who receives and retains such powers. The fact that the petitioner did not exercise her powers in her own favor during the taxable years does not make the income any less taxable to her. Stockstrom v. Commissioner, 8 Cir., 1945, 151 F.2d 353, 356. In enacting § 22(a) of the Internal Revenue Code, Congress intended 'to use its constitutional powers of income taxation to their "full measure."' Helvering v. Stuart, 1942, 317 U.S. 154, 168, 169, 63 S.Ct. 140, 87 L.Ed. 154. It is not necessary that a taxpayer collect the income which is attri-

butable to him for the purposes of income taxation. Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Where his control of a trust is so complete that it must be said that the taxpayer is the owner of the trust's income, then it is taxable to him. Helvering v. Stuart, supra". See also Jergens v. Commissioner, 5 Cir., 136 F.2d 497; and Richardson v. Commissioner, 2 Cir., 121 F.2d 1.

It is not of importance here that the underlying motive of petitioner's mother in executing trust No. 50 was to preserve the continued successful management of the corporation Bunting Brass & Bronze Company. Whatever her motive may have been, the unambiguous and specific language of Article II must control.

We concur in the opinion of the Tax Court, and its decision is therefore affirmed.