**FLATO et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13565.

United States Court of Appeals Fifth Circuit.

April 10, 1952.

Rehearing Denied May 16, 1952.

J. P. Jackson, Sam G. Winstead, Dallas, Tex., Murray G. Smyth, Houston, Tex., for petitioner.

Robert M. Weston, Ellis N. Slack, Robert N. Anderson, Fred E. Youngman, Special Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel and Charles E. Lowery, Special Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RUSSELL Circuit Judge.

This is a petition to review a decision of the Tax Court holding that certain partnership income received in 1943 and 1944, reported in returns of the trustees of six trusts, was not taxable to the trusts, but was taxable in full to the beneficiaries thereof. The basis of the decision is that the beneficiaries possessed such command over the distribution of the income of the trusts as to make it their income for purposes of taxation.[1]

The petitioners are three brothers, Franklin, Frederick and Robert Flato; Grace Flato, wife of Franklin; and Shelley Flato, wife of Frederick. Inasmuch as the deficiencies asserted against Grace and Shelley Flato result from their community property interests in the income of their husbands under the laws of Texas, and since a determination of the issue involved as it relates to the three brothers will be determinative of their rights, the three brothers will sometimes hereinafter be referred to as "petitioners".

On or about June 30, 1941, but effective "as of the 1st day of January, 1941", Edwin and Winnifred Flato, father and mother of petitioners, each created three irrevocable trusts, (a total of six), thus two for the benefit of each of their three sons, and transferred $1,000 cash to each trust. "As of" the same date both parents gave each petitioner $4,000 cash. Franklin was appointed trustee for each of the trusts created for the benefit of Frederick; Frederick was appointed trustee for each of the trusts created for the benefit of Franklin; and Franklin and Frederick were appointed joint trustees for the two trusts created for the benefit of Robert. At this time the parents owned as community property a ¾ths undivided interest in three partnerships; the remaining ¼th undivided interest in these partnerships was owned by Franklin. Pursuant to a preconceived plan, Edwin Flato transferred to each of the three trusts created by him an undivided one-third of his community interest in two of the partnerships and, on behalf of his wife, transferred to each of the trusts created by her an undivided one-third of her community interest in the same two partnerships. The consideration paid for each of these transfers was $5,000 and a note for $9,716.52, payable to Edwin Flato. This transaction transpired on June 30, 1941, but was effective "as of the 1st day of January, 1941."

The two businesses were thereafter, for the years under review, operated as a partnership composed of the six trusts and Franklin individually in accordance with a partnership agreement entered into by Franklin, individually and as trustee, Frederick as trustee, and Franklin and Frederick as trustees for Robert. This agreement was executed June 30, 1941, but was effective as of January 1st, 1941. Franklin and Frederick worked for the partnership and received salaries for their services. The net profit of the partnership was distributed, one-fourth to Frank-

---

1. Also involved in this action was a question relating to income received by Franklin and Grace Flato in 1943 and 1944 from the sale of breeding cattle. The Tax Court sustained the taxpayers' contention that the income was a capital gain, taxable under Section 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j). The Commissioner excepted to this determination, but has now abandoned his petition to review in respect thereto.

lin, individually, and one-eighth to each of the six trusts.

The "Agreement[s] of Trust" were similar, except as to the trustees and beneficiaries named therein. Each provided that the Trust Estate created by it would "be and remain irrevocable", and provided that the beneficiary, or in the event of his death, the contingent beneficiary, at the expiration of 10 years from the date of the trust instrument, might, at his option, declare the trust terminated, in which event, the corpus of the trust estate would become vested in him. The trustee was given broad powers of management over the corpus of the trust and was granted power to "in his discretion, pay to [the named beneficiary], all, or such portion as he deems reasonable and proper, of the net income of this Trust Estate, accumulating all surplus income and adding it to the principal of the Trust Estate." Power was also accorded the trustee to apply for the use of the beneficiary any part of the principal that he might deem wise and expedient.

Robert requested, and received, $2,500 from each of his trusts in 1941, and $2,000 from each in 1942. Frederick requested, and received, $2,000 from each of his trusts in 1942, and $3,500 from each in 1943. In 1942, $1,100 was distributed from each of Franklin's trusts to his church at his request. No other distributions were made from the trusts during this period and none were requested by the beneficiaries. All distributions made from the trusts were reported as income by the beneficiaries, and all of the undistributed income of the trusts was reported by the trustees as income taxable to the trusts.

The Tax Court, two judges dissenting, in its opinion,[2] held that the income of the trusts was taxable to the respective beneficiaries in full under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), finding that "although the distributions of trust income were to be made at the 'discretion' of the trustees, the intention of the grantors was that the beneficiaries could have what they wanted of the trust income and that the discretionary provision was more in the nature of a safeguard to be withheld unless family considerations dictated its enforcement."

Petitioners contend that since the trusts were irrevocable; were "discretionary trusts", and any income not distributed was required to be accumulated in the trusts, the undistributed income of the trusts was taxable to the trusts under Section 161(a) (4) of the Internal Revenue Code, 26 U.S.C.A. § 161(a) (4), and could not properly be taxed as income of the individual beneficiaries. The effect of petitioners' argument is that since the terms of the trusts place them within the "plain language" of the statute, no inquiry should be made into the substance of them. However, it is also contended that the facts disclosed by the evidence do not support the conclusion that the beneficiaries had actual control over the distribution of the income of the trusts.

It is well established, of course, that where income is subject to one's unfettered command and he is free to enjoy it at his own option, he may be taxed on such income whether he elects to enjoy it or not. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. This principle is not limited to the grantor of a trust, but is equally applicable to the beneficiary of a trust. Bunting v. Commissioner of Internal Revenue, 6 Cir., 164 F.2d 443; Grant v. Commissioner of Internal Revenue, 5 Cir., 174 F.2d 891. The incidence of taxation may not be avoided by mere "legal paraphernalia which inventive genius may construct", Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 556, 84 L.Ed. 788, but the Court must look to the "whole nexus of relations between the settlor, the trustee and the beneficiary", Helvering v. Elias, 2 Cir., 122 F.2d 171, 172, and if it concludes that in spite of the form resorted to in effecting a transaction, the results thereof give the beneficiary command over the distribution of the income of a trust, such income is taxable to the beneficiary.

Petitioners rely on Plimpton v. Commissioner of Internal Revenue, 1 Cir.,

---

2. Reported in 14 T.C. 1241, and which contains a full recital of the facts.

135 F.2d 482, to support their contention that the form and not the substance of a trust is determinative of the incidence of taxation and that no judicial inquiry into the conduct of the parties or the actual operation of the trust should be made. Respondent seeks to distinguish that ruling. We do not think it should be applied to the facts of this case. The rule expressed in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 291, 66 S.Ct. 532, 538, 90 L.Ed. 670, "By the simple expedient of drawing up papers, single tax earnings cannot be divided into two tax units and surtaxes cannot be thus avoided", evidences an intention that the results achieved is the criteria for determining the incidence of taxation rather than the "legal paraphernalia" employed to attain such results. The Tax Court was justified in considering the results achieved rather than limiting its consideration to the language of the trust agreements. In support of its conclusion, the Tax Court could properly consider the family relationship of all the parties; the parents' desire to divest themselves of their interest in the partnerships; the manner of creation and number of the trusts; that the father admittedly wanted his three sons to carry on the business; that the two elder sons did manage it; even if not tacitly admitted, the inference, at least, that the gifts of cash to each son were applied to the purchase of the partnership interest which was transferred to the trusts created for each son's benefit; and that notes given for the balance were paid from partnership profits; in short, the entire background of the transactions and business which earned the income.

 The findings of the Tax Court[3] that it was the intention of the grantors

that the beneficiaries "could have what they wanted of the trust income" and that they "requested and got such amounts of trust income as they desired" are supported by the evidence and, since the beneficiaries possessed such command over the distribution of the income of the trusts, such income, whether distributed or not, is taxable to them. Spies v. United States, 8 Cir., 180 F.2d 336. The decision of the Tax Court is neither contrary to law, nor clearly erroneous as without factual support. It is therefore, affirmed.

HUTCHESON, Chief Judge (dissenting).

In agreement with the views of the dissenting judges of the Tax Court, I dissent from the opinion of the majority.

Rehearing denied, HUTCHESON, Chief Judge, dissenting.

3. "We believe that it is fair to infer from the facts of this case that although the distributions of trust income were to be made at the 'discretion' of the trustees, the intention of the grantors was that the beneficiaries could have what they wanted of the trust income and that the discretionary provision was more in the nature of a safeguard to be withheld unless family considerations dictated its enforcement. Albeit there is no evidence of any collusion by the trustee-beneficiaries, on the other hand, there is no evidence of any substantial discretion exercised. The evidence indicates that the beneficiaries requested and got such amounts of trust income as they desired. The fair inference is that they got what they wanted. In our opinion the evidence is sufficient to cause this trust income to be taxed to the beneficiaries. Edward Mallinckrodt, Jr., 2 T.C. 1128; affirmed [Mallinckrodt v. Nunan, 8 Cir.] 146 F.2d 1. Edgar R. Stix, 4 T.C. 1140; affirmed [2 Cir.] 152 F.2d 562."