Robert H. FLATO, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 16362.

United States Court of Appeals
Fifth Circuit.

June 10, 1957.

Harvie Branscomb, Jr., Branscomb &
Foy, Corpus Christi, Tex., for petitioner.

Marvin W. Weinstein, Hilbert P. Zar-
ky, Fred E. Youngman, Ellis N. Slack,
Lee A. Jackson, Attys., Dept. of Justice,
Washington, D. C., Charles K. Rice, Asst.
Atty. Gen., John Potts Barnes, Chief
Counsel Internal Revenue Service,
Charles O. Johnson, Sp. Atty., Internal
Revenue Service, Washington, D. C., for
respondent.

Before HUTCHESON, Chief Judge,
and JONES and BROWN, Circuit Judg-
es.

JONES, Circuit Judge.

In a proceeding before the Tax Court
for ascertaining the correctness of the
determinations made by the Commission-
er of Internal Revenue of the Federal in-
come tax liability of Robert H. Flato for
the years 1945 and 1946, the facts were
stipulated. Edwin F. Flato and Winni-
fred W. Flato, of Corpus Christi, Texas,
were the parents of three sons, Franklin
Flato, Frederick W. Flato, and Robert H.
Flato. The parents owned as community
property a three-fourths interest in three
partnerships, Nueces Hardware Compa-
ny, doing a retail business in the sale of
hardware and appliances; Edwin Flato
Company, dealing in appliances at whole-
sale; and United Securities Company,
operating a finance business and han-
dling installment and other obligations.
The other one-fourth was owned by
Franklin Flato. Edwin wanted his three
sons to carry on his businesses. As a
medium for effecting this plan, he and
his wife, in 1941, each created three
trusts, one for the benefit of each son, six
trusts in all. Franklin was trustee of
the two trusts for Frederick; Frederick
was trustee of the trusts for Franklin;
and Franklin and Frederick were trus-

tees of the trusts for Robert who was then seventeen years of age. The terms of each of the six trust agreements were the same. The agreements creating trusts for Robert provided, among other things, that:

"From and after the creation of this Trust Estate, as nearly as may be, the Trustees shall, in their discretion, pay to Robert H. Flato all, or such portion as they deem reasonable and proper, of the net income of this Trust Estate, accumulating all surplus income and adding it to the principal of the Trust Estate."

Franklin Flato, individually, and the trustees entered into a partnership agreement for the operation of Edwin Flato Company and United Securities Company, and the trustees acquired the interests of Edwin and Winnifred Flato in these enterprises.

In 1941 the trustees paid to Robert at his request $2,500 from each of his trusts, and $2,000 from each in 1942. Frederick requested and received $2,000 from each trust in 1942 and $3,500 from each in 1943. In 1942 Franklin's church was paid $1,100 from each of the trusts for his benefit at his request. The undistributed income for the years 1943 and 1944 was reported by the trustees. The Commissioner contended that all of the net trust income was taxable to the beneficiaries. A divided Tax Court found that the evidence indicated that the beneficiaries requested and got such amounts of income as they wanted and there was no evidence of the exercise by the trustees of any substantial discretion. The proceeding involved all three of the Flato brothers. The divided Tax Court held that the undistributed income of the trusts for 1943 and 1944 was taxable to the beneficiaries. Franklin Flato, 14 T.C. 1241. This Court, by a divided vote, affirmed. Flato v. Commissioner, 5 Cir., 1952, 195 F.2d 580.

As in 1943 and 1944, the trustees distributed no income to beneficiaries in 1945 or 1946. As in the prior years, the Commissioner determined that this undistributed income was taxable to the beneficiaries. The correctness of these determinations was submitted to the Tax Court where the deficiencies proposed as to Frederick and Franklin were agreed to, and the deficiency proposed as to Robert was contested. In the Tax Court proceeding Robert testified that in 1945 he was in the Army in Germany. In December of that year he returned to the United States and was discharged from the Service. During 1946, Robert was a student at Yale University, except during the summer months when he worked as a salesman at the hardware store in Corpus Christi. He was not consulted about the operation of the trusts and did not participate in the management of the trusts. He requested no payments from the trusts during those years and received none. He always followed his father's suggestions or directions. Franklin and Frederick testified that Robert did not at any time have anything to do with the administration of the trusts of which he was the beneficiary, that in 1945 and 1946 it was their decision that the trust income should be retained and not distributed, and that this decision was made in good faith and in the exercise of the discretion granted by the trust instruments. During these years, 1945 and 1946, the production of refrigerators and stoves was being resumed after the war and it was decided that the trust income was needed in the businesses.

Before the Tax Court the Commissioner contended that the question of the taxability of the undistributed trust income had been determined by the prior proceeding, and that a consideration of such issue for the years subsequent was precluded by the doctrine of collateral estoppel or estoppel by judgment. The Tax Court sustained this position in an unreported opinion. It was also held by the Tax Court that, if it was in error as to the application of the doctrine of collateral estoppel, the income from the trusts of which Robert H. Flato was the beneficiary was taxable to him under 26 U.S.C.A., I.R.C.1939, § 22(a). Before us is a petition for review of the decision of the Tax Court.

 The principle of collateral estoppel as applied to federal income tax cases has been considered by the Supreme Court in Tait v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, and in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; and by this Court in Argo v. Commissioner, 5 Cir., 1945, 150 F.2d 67, certiorari denied 326 U.S. 762, 66 S.Ct. 144, 90 L.Ed. 459; Wurtsbaugh v. Commissioner, 5 Cir., 1951, 187 F.2d 975; Alexander v. Commissioner, 5 Cir., 1955, 224 F.2d 788; and Campbell v. Batman, 5 Cir., 1956, 239 F.2d 283. No need exists here for further discussion of the doctrine. The doctrine applies only where there is an identity of the essential facts and of the governing law. In the prior case a divided Tax Court found, upon evidence which this Court, by a divided vote, held to be sufficient, that the trustees did not exercise their discretion and that the beneficiaries requested and got what income they wanted. It is said that "Nonaction toward distribution may amount to exercise of discretion to accumulate". 6 Mertens Law of Federal Income Taxation 338, § 36.56. So would the conduct of the trustees during the years involved in the first Flato case amount to the exercise of a discretion to pay income to the beneficiaries if requested by them. In the present case there was evidence that they exercised their discretion with respect to the disposition of the income and determined that in their judgment the income was needed in the business of the partnership and should be retained in the business rather than distributed to the trust beneficiaries. The evidence is not controverted. The Tax Court does not discredit it. This evidence, and the facts as shown by it, are decidedly different from the facts upon which the prior Flato case was determined. The failure of the trustees, in prior tax years, to exercise their discretion with respect to the distribution of trust income to beneficiaries, and the pursuit of a policy of giving the beneficiaries such income as they wanted, should not preclude the application of the tax incidence that would otherwise follow the exercise of the discretionary powers. We conclude that the doctrine of collateral estoppel does not apply.

 Franklin Flato and Frederick Flato did not contest the tax deficiencies assessed against them resulting from the inclusion as taxable to them of the undistributed income from the trusts created for their benefit. In its opinion the Tax Court comments that this concession is significant since the only apparent distinction is that Robert was not a trustee and his brothers were. The Tax Court thought this difference was not of controlling importance. We think that Robert ought not to be prejudiced by the failure of his brothers to litigate their tax liability. We think there might be a real distinction between their tax position and his for the controverted years. It might be regarded that they, being both trustees and beneficiaries, had an unfettered command of income which made it taxable to them whether distributed or not. Mallinckrodt v. Nunan, 8 Cir., 1945, 146 F.2d 1, certiorari denied 324 U.S. 871, 65 S.Ct. 1017, 89 L. Ed. 1426; Spies v. United States, 8 Cir., 1950, 180 F.2d 336. Cf. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. Such is not the case of Robert. We conclude that the Tax Court reached erroneous conclusions both as to the application of collateral estoppel and on the taxability of income in the absence of estoppel. We think Robert had no absolute right to require the payment to him of trust income during the years in question. Such being our conclusion, it follows that the decision of the Tax Court should be and it is therefore

Reversed.