OPINION. Van Fossan, Judge: The first question is whether or not the income of the six trusts is taxable to the beneficiaries of those trusts. Three of the petitioners are sons of the grantors of six trusts. The other two petitioners are wives of two of the sons. The mother and father owned a three-fourths interest in three partnerships. The other one-fourth interest was owned by the son Franklin. It was the parents’ desire to divest themselves of the interest in two of these partnerships and place it in trust for the benefit of their three sons. The mother and father each created three trusts, one for the benefit of each son, and transferred $1,000 to each trust. Also, the mother and father each gave $4,000 to each of the three sons. The first son was trustee of the two trusts for the second son; the second son was trustee of the two trusts for the first son; and the first and second sons were trustees of the two trusts for the third son. All of the six trusts were “discretionary” trusts. The trusts bought the parents’ interest in two of the partnerships, each trust paying $5,000 in cash and giving a note for $9,716.52. A formal partnership agreement was executed between the two sons as trustees of the trusts which now owned a three-fourths interest in the two businesses, one of those same sons owning the remaining one-fourth interest. The partnership profits were divided equally; that is, three-fourths was equally divided among the six trusts and one-fourth went to Franklin, who himself owned this interest. The trustees made various distributions of trust income to the beneficiaries on the request of the latter. The respondent contends “that the creation of the trust[s] was a mere sham and artifice and an attempt to divide the partnership income sis ways instead of three ways; that the three brothers are the real partners; and the income of the partnership is taxable to them under section 22 (a) of the Internal Revenue Code.” The broad question presented in this case is a familiar one. We are told in Helvering v. Clifford, 309 U. S. 331, that: * * * Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. * * * A similar thought‘was expressed differently in Higgins v. Smith, 308 U. S, 413, where it is said that “It is command of income and its benefits which marks the real owner of property.” Article VII of each trust provided that “the Trustee shall, in his discretion, pay to [the named beneficiary], all, or such portion as he deems reasonable and proper, of the net income of this Trust Estate.” It is because of the characterization of the trusts as “discretionary” that the petitioners defend, principally, their position that the partnership income is trust income rather than income to the beneficiaries. The petitioners have gone to considerable length in offering testimony from witnesses and argument on brief to show that there was no collusion as a result of the trustee-beneficiary interrelations here and that in each instance the payments to the beneficiaries at their request of the trust income were in fact made at the “discretion” of the trustees. In our judgment, the petitioners have overproven their case. The very proof to which they point with confidence, to us establishes the position contended for by respondent. In short, the proof arouses our incredulity. The appellation “discretionary” scarcely seems to fit a trust where, as here, its trustee-beneficiaries are so similar as to age, experience, and ability to influence each other. We believe that it is fair to infer from the facts of this case that although the distributions of trust income were to be made at the “discretion” of the trustees, the intention of the grantors was that the beneficiaries could have what they wanted of the trust income and that the discretionary provision was more in the nature of a safeguard to be withheld unless family considerations dictated its enforcement. Albeit there'is no evidence of any collusion by the trustee-beneficiaries, on the other hand, there is no evidence of any substantial discretion exercised. The evidence indicates that the beneficiaries requested and got such amounts of trust income as they desired. The fair inference is that they got what they wanted. In our opinion the evidence is sufficient to cause this trust income to be taxed to the beneficiaries. Edward Mallinckrodt, Jr,, 2 T. C. 1128; affd., 146 Fed. (2d) 1. Edgar R. Stix, 4 T. C. 1140; affd., 152 Fed. (2d) 562. There remains for discussion the respondent’s contention that the beneficiaries were substantially the settlors of the trust. The respondent points out that the mother and father transferred $1,000 to each of the trusts when they created them. At the same time, they each transferred $4,000 to each beneficiary. The trusts then each paid $5,000 for the partnership interest. The record does not explain how the trusts got the $4,000 from the beneficiaries. Possibly, there was a transfer of $4,000 from each beneficiary to each of his two trusts. Gift returns were filed and notes for the balance of payments signed, but these may well have been the “legal paraphernalia” which tend to “obscure the basic issue.” The $8,000 cash given to each of the beneficiaries and the $1,000 given the trusts were returned almost.immediately to the father and mother. The notes, representing the balance due, were paid out of the trusts’ share of partnership profit in 2 years. The petitioners contend that “both the $1,000 and the $4,000 came from the father and mother and that it was all part of a single transaction. * * * It was a single-package transaction. No part of the money or property originated with the petitioners.” This does not adequately explain this devious aspect of the transaction, and, although in itself not decisive, it is, however, one of the factors which weigh in our conclusion. It is our opinion that the income of the six trusts is taxable to the respective beneficiaries under the provisions of section 22 (a) of the Internal Revenue Code, and we so hold. The second issue is whether or not the gain realized by Franklin Flato in 1943 and 1944 on the sale of cattle used for breeding purposes is taxable as ordinary income, or as capital gain under the provisions of section 111 (j) of the Internal Revenue Code. This issue^affects only Franklin Flato and his wife, Grace, who filed community property tax returns. Prior to the taxable years, Franklin Flato acquired a ranch on which he raised beef cattle for sale. In 1943 Franklin decided to sell the ranch and all the cattle except a few which he transferred to a newly acquired ranch. The sale of the first ranch was completed in 1944. The ranch and cattle were sold separately. Some of the cattle sold in those years were the young animals sold as the product of the business of raising beef. The other cattle sold were the breeding stock, the sale of which was not a part of the ordinary business of raising beef cattle and more analogous to the liquidation of a business. The amounts received from the sale of the breeding cattle were reported as long term capital gains and not as ordinary income as the respondent contends they should be. We can see no substantial difference between the situation in tbis issue and the cases of Isaac Emerson, 12 T. C. 875, and Fawn Lake Ranch Co., 12 T. C. 1139. Both of these cases followed Albright v. United States, 173 Fed. (2d) 339, in which the court said: In order for the taxpayer to come within the provisions of section 117 (j) permitting him to treat the sales from his dairy and breeding herds as sales of capital assets, the burden is upon him to show: (1) that the animals sold were used in his trade or business; (2) were subject to allowance for depreciation; (3) were held for more than six months; (4) were not property of the kind includible in the inventory of the taxpayer if on hand at the close of the taxable year; and (5) that the animals were not held by the taxpayer ■primarily for sale to customers in the ordinary course of his trade or business. * * * The respondent contends that the petitioners have failed to show that the breeding cattle were not held primarily for sale in the ordinary course of the business. We can not agree. The respondent’s position in this respect is the same as taken in the above cited cases, from which position he has not receded here. On the authority of those cases we therefore hold that the sale of breeding cattle should be considered a capital gain under the provisions of section 117 (j). Reviewed by the Court. Decision will be entered wider Rule 50.