Frederick W. Flato et al. [1] v. Commissioner. Flato v. Commissioner
Docket Nos. 38891-38901.
United States Tax Court
T.C. Memo 1955-216; 1955 Tax Ct. Memo LEXIS 121; 14 T.C.M. (CCH) 853; T.C.M. (RIA) 55216; July 29, 1955
*121 Held: 1. The judgment in Franklin Flato, 14 T.C. 1241, affd. 195 Fed. (2d) 580, sustaining the taxability of trust income to the beneficiaries under section 22(a), I.R.C. (1939), and not to the trusts, constitutes a bar to the present proceedings involving the same trusts under the principle of collateral estoppel. If we are in error in so holding, on the facts in this record we hold the income of the two trusts established for the benefit of Robert H. Flato is taxable to him under section 22(a), I.R.C. (1939), in the taxable years 1945 and 1946. Franklin Flato, supra, followed. 2. The gain realized on the sale of real property known as Nueces Gardens No. 2, in the year 1945, is taxable as capital gain and not as ordinary income. 3. Imposition of the additions to the tax for fraud against Frederick W. Flato for each of the taxable years 1945 and 1946 disapproved. Harvie Branscomb, Jr., Esq., for the petitioners. Edward L. Compton, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve income tax deficiencies for the years and in the amounts as follows: 1945
1946
50%
50%
Deficiency
Penalty
Deficiency
Penalty
Frederick W. Flato
38891
$3,465.35
$1,732.68
$13,130.65
$6,565.33
Robert H. Flato
38892
7,657.57
27,028.53
Franklin Flato
38893
5,422.75
12,334.23
Grace Flato
38894
5,521.67
12,291.67
Shelley Flato
38895
3,465.35
13,176.92
Robert Flato Trust
38896
894.47
3,748.93
Franklin Flato Trust
38897
894.47
3,748.93
Franklin Flato Trust
38898
894.47
3,748.93
Frederick Flato Trust
38899
894.47
3,748.92
Robert Flato Trust
38900
894.47
3,748.93
Frederick Flato Trust
38901
894.47
3,748.92
The *122 contested issues are (1) whether a reconsideration on the merits of the question as to the taxability of the income of the 2 Robert H. Flato trusts for the taxable years involved is barred by the doctrines of collateral estoppel and res judicata; (2) whether the gain realized by the partnership of Franklin Flato et al., on the sale of realty known as Nueces Gardens No. 2 is taxable as ordinary income or as capital gain; and (3) whether for each of the taxable years 1945 and 1946 Frederick * W. Flato filed a false and fraudulent federal income tax return with intent to evade tax. Findings of Fact The stipulated facts have been found accordingly. Petitioners Franklin, Robert, and Frederick Flato are the sons of Edwin and Winnifred Flato. The petitioners, Grace and Shelley Flato, are the wives of Franklin and Frederick, respectively, who filed community property tax returns. Robert is unmarried and was 21 years old in 1945. Prior to 1941, Edwin Flato and Winnifred Flato owned as community property a 3/4 interest in 3 separate partnerships. The remaining 1/4 was owned by Franklin Flato. The *123 3 companies were Nueces Hardware Company, dealing in hardware and appliances at retail; Edwin Flato Company, dealing in appliances at wholesale; and United Securities Company, which was engaged in a general finance business and purchased various types of paper and installment obligations. Edwin Flato wanted his 3 sons to carry on the businesses. Franklin and Frederick were married and their father was concerned about the possibility that their wives could cause them trouble by interfering in the business. Robert was only 17, and it was believed that he could not enter into a partnership. The parents decided to sell their interest in 2 of the companies to trusts to be created for the benefit of each of the 3 sons. As of January 1, 1941, each parent executed a trust deed for the benefit of each son, transferring to each trust $1,000. As of the same date, each parent made a cash gift of $4,000 to each son. Gift tax returns were filed convering each of these gifts. Franklin was named trustee of the 2 trusts for the benefit of Frederick, who was named as trustee of the 2 trusts for the benefit of Franklin, and Frederick and Franklin were made cotrustees of the 2 trusts for the benefit *124 of Robert. The 6 trust deeds were the same except as to names. The trustee, or trustees, were empowered to retain the corpus or to reinvest it, to receive other property from the trustor or others; and to purchase an interest in the partnership, firm, business, or corporation belonging to the trustor or others. Article III gave the trustee power to employ a manager of the properties and relieved the trustee of all liability if he acted in good faith and upon the advice of the manager; Article IV relieved the trustee of personal liability to any beneficiary on account of his management of the trust property; Article V directed the trustee to keep books of account; Article VI provided that the trustee in his discretion could make distribution in kind of the principal; and Article VII provided: "From and after the creation of this Trust Estate, as nearly as may be, the Trustee shall, in his discretion, pay to * * * [the named beneficiary] all, or such portion as he deems reasonable and proper, of the net income of this Trust Estate, accumulating all surplus income and adding it to the principal of the Trust Estate." Article VIII allowed the trustee to apply for the use of the beneficiary *125 any part of the principal that he might deem wise and expedient. Articles IX and X provided for the operation of the trust upon the death of the beneficiary. Article XI provided: "This Trust Estate being one of several created by the Trustor, the Trustee shall not be required to effect an actual physical division of any properties or securities held hereunder, but shall be at liberty, for convenience of administration, to retain the same in solido and to regard the shares or property in his hands as constituting pro rata investments in common of the several separate Trust Estates above provided for until and as the given separate parts shall respectively and from time to time be released from the separate Trust Estates." Article XII provided that: "This Trust Estate shall be and remain irrevocable, and not subject to modification, alteration, or revocation, and in no event shall the Trustor have the right to repossess the income or principal of the Trust Estate, or any part thereof, during his lifetime." Article XIII provided as follows: "Neither the income nor principal of this Trust Estate shall be liable for the debts of any beneficiary hereunder, nor shall the same be subject to *126 seizure by any creditor or any beneficiary under any writ or proceeding at law or in equity, and no beneficiary hereunder shall have any power to sell, assign, transfer, encumber, or in any manner to anticipate or dispose of his or her interest in the Trust Estate, or the income therefrom." Article XIV provided as follows: "After the death or resignation of * * * [named trustee], or in the event of the death or resignation of any successor Trustee during the term of this trust, * * * [the named beneficiary] may appoint a successor trustee. If, prior to the occurrence of either of the above contingencies, * * * [the named beneficiary] be dead, the beneficiary, or a majority of the persons who are beneficiaries hereunder, of full age, or if no beneficiary is of age, his or her legal representative, may appoint a successor Trustee. * * *
"A successor Trustee shall have all the powers, rights and duties imposed and conferred upon the original Trustee herein named. "A successor Trustee, as that term is hereinabove used, may be a corporation or an individual or individuals." As of January 1, 1941, Edwin Flato transferred to each of the 3 trusts 1/3 of a 3/4 interest held by him and his wife *127 as community property in 2 partnerships, Edwin Flato Company and United Securities Company. Pursuant to the plan that the trusts would buy the partnership interests from the parents, the trustees of the 6 trusts gave a consideration of $14,716.52, represented by $5,000 in cash and a note given to Edwin Flato for $9,716.52, bearing interest at 1/2 of 1 per cent per annum. On June 30, 1941, Franklin, individually, and Frederick and Franklin, as trustees of the 3 trusts, entered into a partnership agreement as of January 1, 1941, to operate the United Securities Company and the Edwin Flato Company as a partnership. The respective interests in the new partnership as shown by the agreement were as follows: Franklin Flato, individually, 25 per cent, and each of the 6 trusts, 12 1/2 per cent, aggregating in all $156,567.12, the net worth as of June 30, 1941. The partnership was required to keep regular books and prepare year-end inventories and statements. Profits were divided on the books in accordance with the partnership agreement. Franklin and Frederick worked for the partnership and received salaries as employees. During the taxable years Robert was in school or in the army. The partnership *128 was dissolved in 1946. The respective shares and the income of the new partnership, after deductions for amounts paid as salaries to Franklin and Frederick, as shown on the partnership returns filed for the years 1945 and 1946, were as follows: 1945
Franklin Flato, individually, 1/4
$ 8,468.08
Each of the 6 trusts, 1/8, or $4,234.05
each, aggregating
25,404.30
Total
$ 33,872.38
1946
Franklin Flato, 1/12
$ 8,761.45
Frederick Flato, 1/12
8,761.45
Robert Flato, 1/12
8,761.46
Frederick Flato trusts (2), each 1/8,
or
26,284.40
Franklin Flato trusts (2), each 1/8,
or
26,284.38
Robert Flato trusts (2), each 1/8, or
26,284.38
Total
$105,137.52
A fiduciary return was filed by each of the 6 trusts for the taxable years 1945 and 1946, on which was reported a pro rata share of the partnership income. No distributions were made to any of the 3 brothers as beneficiaries during the years 1945 and 1946. On August 14, 1944, the Flatos acquired a tract of land comprising 362.85 acres, situated about 12 miles beyond the city limits of Corpus Christi, Texas. The land extended about 1 1/2 miles along the highway. The property was acquired for investment with the idea in mind of selling the front 155 acres and retaining the remaining *129 207 acres in the rear. The 155 acres along the highway was subdivided into 31 lots of 5 acres each, and was known as Nueces Gardens No. 1. These lots were sold under land contracts and were disposed of by the early part of 1945. Herman Plath, a real estate broker, handled the sales on a commission basis. After the 31 lots had been disposed of Plath made repeated efforts to have the Flatos subdivide the remaining 207 acres, which consisted of brush land, but they refused to do so. In about May 1945 he made an offer to purchase the tract for a consideration of around $51,000 or $52,000. Later, Plath and the Flatos agreed on a price of $53,250. Plath did not have the cash and it was agreed that Plath would subdivide the tract and sell upon his own account, and that the purchase contracts secured by him were to be turned over to the United Securities Company to apply on the purchase price. When Plath had acquired sufficient land contracts, the Flatos agreed to execute a deed transferring title to Plath. The tract was platted and subdivided into 33 lots by Plath and was known as Nueces Gardens No. 2. By the end of 1945, Plath had sold all but 2 of the 33 lots. As each sale was made Plath *130 turned over the down payments to United Securities Company, and the purchasers' monthly payments were made directly to the United Securities Company. By the end of the year the Flatos had in their possession conditional sales contracts totaling $66,757. A deed dated December 28, 1945, reciting the sale of the land to Plath was executed by Frederick Flato and recorded on December 29, 1945. The deed recited the existence of a 30-day promissory note in the face amount of $53,250, payable to Frederick Flato and bearing interest at 6 per cent. On February 9, 1946, a final settlement was had between Plath and the Flatos, and the United Securities Company purchased the conditional sales contracts and Plath's note was cancelled. The bookkeeping department of the United Securities Company kept the records for Plath as to the Nueces Gardens No. 2 transactions in the same manner in which they had been kept with respect to the No. 1 subdivision. After the execution of the deed of December 28, 1945, to Plath, the error in the book entries was discovered and a proper entry adjustment made to reflect the change. The books of United Securities Company disclosed that between July 1945 and the end of *131 the year the company had made advances or loans to Plath without indication of their purpose. On the 1945 partnership return the amount of $46,800 was reported as the profit on the sale of land, of which the sum of $23,430 was recognized as a long-term capital gain. The respondent determined that the entire amount constituted ordinary income. The 207-acre tract known as Nueces Gardens No. 2 was platted, subdivided, and sold by Herman Plath at his own risk, cost and expense, and without supervision or control of the Flatos. The 207-acre tract known as Nueces Gardens No. 2 was held by the Flatos as an investment rather than property held for sale to customers. The 207-acre tract was a capital asset held for more than 6 months, and the gain realized from its sale in the taxable year 1945 is subject to capital gains treatment. Frederick Flato did not file a false and fraudulent tax return with intent to evade tax in the taxable year 1945 or 1946. Opinion LEMIRE, Judge: The first question presented is whether the income of the 2 trusts for the benefit of Robert H. Flato is taxable to him or to the trusts in the years 1945 and 1946. The respondent, by amended answer, affirmatively pleads *132 that a reconsideration of the merits of this issue is barred by the doctrine of res judicata by way of collateral estoppel or estoppel by judgment. The entire record of the proceedings in this Court in Franklin Flato, 14 T.C. 1241, [2] was offered in evidence in this proceeding, without objection. In our prior decision filed June 22, 1950, it was held that the trust income of the 6 trusts was taxable to the beneficiaries, under the provisions of section 22(a) of the Internal Revenue Code of 1939, and not to the trusts. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed, 195 Fed. (2d) 580. That decision has become final and remains in full force and effect. The prior proceedings involved the same parties, the same trusts, and the same partnership agreement with which we are now concerned, but dealt with the question of income tax liability for the years 1943 and 1944. Both parties here rely on the operation of the principles of res judicata and collateral estoppel as enunciated by the Supreme Court in Commissioner v. Sunnen, 333 U.S. 591. *133 The distinction in the operation of the principle has been so thoroughly analyzed by subsequent decisions as to render unnecessary any discussion here. The difficulty arises in the proper application of the rules to the particular case under consideration. The principle of collateral estoppel is to prevent repititious litigation over matters which have once been decided and have remained factually and legally the same. There has been no change in the applicable law since the prior decision. While some additional evidence was presented, we perceive no controlling fact or circumstance that would prevent the application of the doctrine of collateral estoppel by judgment in the instant proceeding. We are of the opinion and hold that a reconsideration on the merits as to whether the income of the trusts is taxable to the beneficiaries in the years 1945 and 1946 is barred under the doctrine of collateral estoppel. Although all of the petitions filed herein assign error as to the respondent's determination that the income of the trusts is taxable to the beneficiaries, it has been stipulated that the deficiencies determined in the cases of Frederick W. Flato, Docket No. 38891; Franklin Flato, *134 Docket No. 38893; Grace Flato, Docket No. 38894; and Shelley Flato, Docket No. 38895, are agreed to insofar as they are predicated upon the taxation to said petitioners of the income of the 2 trusts established for the benefit of Franklin Flato and Frederick W. Flato, respectively, leaving as a contested issue here the taxability of the income of the 2 trusts established for the benefit of Robert H. Flato. This concession, we think, is significant, since the only distinction apparent to us is the fact that Robert was not a trustee of any of the trusts. In our opinion, such fact is not of controlling importance since the same situation existed when our prior decision was rendered. If we are in error as to the application here of the doctrine of collateral estoppel, in the light of the entire record we hold that, under section 22(a) of the 1939 Code, the income of the 2 trusts established for the benefit of Robert H. Flato is taxable to him in the years 1945 and 1946. Franklin Flato, supra, followed. Cf. Bridgeport Hydraulic Co., 22 T.C. 215, affd. per curiam, 223 Fed. (2d) 925 (July 1, 1955). The second question presented involves a factual determination as to whether the 207-acre *135 tract known as Nueces Gardens No. 2 was property held for sale to customers or whether it was held for investment and a capital asset. The respondent contends that the transactions carried on between Plath and the Flatos with respect to the sale of the 207-acre tract was a scheme and plan without substance, designed by the Flatos to enable them to treat the gains from the sale at capital rates rather than as ordinary income. It is further argued that Plath was a mere puppet, willing to do the bidding of the Flatos who actually financed and controlled the subdivision from behind the scenes, and that empty legal formalities were carried out with a design to mislead the respondent. At the time of the trial of these proceedings Plath was deceased. We are not persuaded that Plath in any respect connived with the Flatos to enable them to defraud the Government, and there is not a scintilla of evidence to substantiate the inference drawn by the respondent as to Plath's activities. The respondent further argues that the alleged oral agreement made with Plath in May or June 1945, with respect to the sale of the 207-acre tract, was a pure invention of the Flatos. This inference appears to be *136 drawn from the fact that the original petitions filed herein referred only to the sale having taken place on December 28, 1945, the date of the execution of the deed to Plath, and the first mention of the oral agreement is in the amendment to the petitions filed at the commencement of the hearings. The respondent contends that a revenue agent subsequently visited the office of the partnership and discovered that the records disclosed that certain lots within the tract were sold by Plath as early as July 1945, and that the oral agreement was conceived for the purpose of overcoming that evidence. The testimony of Frederick Flato, who negotiated the oral agreement with Plath, and that of his brother Franklin, with whom the matter was discussed, was not a definite and convincing as might be expected in a transaction of such importance. We think the lapse of time and the fact that they did not make proper records when the event took place may account for their failure to be more specific and definite in recalling the details. The alleged inconsistencies appear to have been satisfactorily explained. Furthermore, other witnesses gave credible evidence bearing on the facts material to this *137 issue. We think we would not be justified in disregarding the uncontradicted testimony of the Flatos respecting the oral agreement as unworthy of belief. Accordingly, we have found as ultimate facts that the tract known as Nueces Gardens No. 2 was property held for investment and not for sale to customers, and that it was sold in the taxable year 1945. The gain realized from the sale is taxable as a long-term capital gain and not as ordinary income. On this issue we sustain the petitioners. The final issue involves the propriety of the addition to the tax for fraud with respect to petitioner Frederick W. Flato for each of the years 1945 and 1946. This issue was raised by amended answers filed subsequent to the trial of these proceedings. It is predicated upon the allegation that Frederick Flato wilfully and knowingly returned the gain from the sale of the 207-acre tract as capital gain when he, in fact, knew it to be ordinary income. Since we have sustained the right of the petitioners to report the gain as capital gain, it logically follows that the additions to the tax for fraud with respect to Frederick Flato may not be imposed. It has been stipulated that the profit realized from *138 the sale of breeding cattle, reported as a capital gain by the Flato Brothers Cattle Company, a partnership, for the year 1945, with respect to which the respondent has determined a deficiency exists, is capital gain and taxable as such. Effect will be given to the respective concessions of the parties in the computations under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following are consolidated herewith: Robert H. Flato; Franklin Flato; Grace Flato; Shelley Flato; Franklin Flato and Frederick Flato, Trustees of the Robert Flato Trust, Winnifred W. Flato, Grantor; Frederick Flato, Trustee of the Franklin Flato Trust, Edwin F. Flato, Grantor; Frederick Flato, Trustee of the Franklin Flato Trust, Winnifred W. Flato, Grantor; Franklin Flato, Trustee of the Frederick Flato Trust, Edwin F. Flato, Grantor; Franklin Flato and Frederick Flato, Trustees of the Robert Flato Trust, Edwin F. Flato, Grantor; Franklin Flato, Trustee of the Frederick Flato Trust, Winnifred W. Flato, Grantor.↩
*. This name was changed from "Franklin" to "Frederick" by a Tax Court Order dated August 16, 1955.↩
2. Proceedings of the following petitioners were consolidated therewith: Grace Flato; Robert H. Flato; Frederick W. Flato; and Shelley Flato.↩