COMMISSIONER OF INTERNAL REVENUE v. DRAVO et al. (two cases).

Nos. 7464, 7465.

Circuit Court of Appeals, Third Circuit.

April 1, 1941.

98

BIGGS, Circuit Judge, dissenting.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

Wm. S. Moorhead, of Pittsburgh, Pa. (Wm. F. Knox, of Pittsburgh, Pa., on the brief), for respondents.

Before BIGGS, MARIS, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

These cases are brought to this court at the instance of the Commissioner of Internal Revenue by petitions to review the decisions of the United States Board of Tax Appeals. While the estates of two decedents are involved, the single question, as the cases come to this court, is whether there should be included in the gross estate of each decedent the value at the date of death of property constituting the corpus of a trust created by each decedent prior to his death.[1] The controlling statute is the Revenue Act of 1926, Ch. 27, 44 Stat. 9, and the question raised is presented under Section 302.[2] The recital of facts, and the dis-

[1] The Board of Tax Appeals found that the transfers in question were not made in contemplation of death and further held, on the authority of Hassett v. Welch, 1938, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858, that the value of the corpus of each trust could not be included in the gross estate under Section 302(c) as amended by the Joint Resolu-

tion of March 3, 1931, c. 454, 46 Stat. 1516, since the trusts were created prior to the enactment of the Joint Resolution. Neither of these points have been argued by the Commissioner.

[2] The question is raised by the following provisions:

"Sec. 302. The value of the gross es-

cussion. will be confined to those involved in the estate of Francis R. Dravo. The identical issue is raised with respect to the tax upon the estate of Ralph M. Dravo and the conclusion reached with regard to one will necessarily control the other.

Francis R. Dravo of Pittsburgh and his wife, Fanny M. Dravo, executed trusts simultaneously on January 17, 1931. It is found as a fact that one of the controlling purposes for the formation of the trusts was to give the ultimate control in the Dravo Corporation and its constituent companies to the group of men associated with the two Dravo brothers in the development of the business conducted by these concerns. Mr. Dravo on this date transferred to the trustees shares of stock in various Dravo enterprises and made provision for the division of the corpus after the death of his wife, Fanny M. Dravo. Among other things, Article 2 of the trust provided: "The Trustees may advance portions of the principal hereof to or for the use or benefit of the Creator's said wife, at such times, in such amounts and for such purposes as the said Trustees in their opinion may deem advisable." Fanny M. Dravo simultaneously transferred, to the trustees of her trust, securities then owned by her which were identical in kind and amount to those transferred by her husband, Francis. Her deed was in all substantial respects the same as that of her husband except that the relative positions of husband and wife were reversed therein. The trustees were the same in both deeds and were Francis R. Dravo, Ralph M. Dravo, his brother, and the Bank of Pittsburgh National Association. Francis R. Dravo died February 26, 1934.

The government's contention is that the substance of the arrangement as between husband and wife was that the grantor created a trust, the enjoyment of which was at his death subject to change through the exercise of a power to alter, amend or revoke under Section 302(d) and that consequently the value thereof is includable in the gross estate.

Our problem is to appraise the trust instrument against a background of realities to determine whether the grantor retained "the controlling hand over something he has seemed to give away." See Fulham v. Commissioner, 1 Cir., 1940, 110 F.2d 916. The issue is of the type, not unfamiliar in the law, where the distinctions are not black and white, but of varying shades of gray and where the shade chosen by a court will seem "realistic" to him whose side wins and artificial or fanciful to the other.

Petitioner contends that the right of the decedent to receive distribution from the corpus of the estate created by his wife was not materially different from a right to revoke a transfer (as in Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397) or the interest in insurance policies retained by the decedent in Chase National Bank v. United States, 1929, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388. The Commissioner contends that the principle relied upon was applied by the Circuit Court of Appeals for the Second Circuit in Lehman v. Commissioner, 1940, 109 F.2d 99. In that case the decedent and his brother had simultaneously created separate trusts each giving the other the income for life and the power of invasion of the corpus to the extent of $150,000. The decedent died without having made any withdrawals of principal. It was held that the value of the trust created by the decedent's brother was properly included in the gross estate to the extent of $150,000.

We agree fully with the result reached in the Lehman case. But it is to be noted that there the life beneficiary was given an unqualified power to invade the corpus of the trust created by the brother. Fulham v. Commissioner, 1 Cir., 1940, 110 F.2d 916 has language in the trust deed fairly close

tate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

* * * * * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or other-

wise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *" 26 U.S.C.A. Int.Rev. Acts, pages 227, 228.

to that in the instant case. But the question there was whether under the income tax statute the power to revest the corpus in the grantor depended on the consent of a person having a substantial adverse interest. In Higgins v. White, 1 Cir., 1937, 93 F.2d 357, 358, also an income tax case, we have language permitting the trustees to pay "such sums or sum out of the principal as they shall deem necessary or advisable for the comfort, maintenance, support, advancement, education or welfare" of the beneficiaries. In that case a husband and wife had each set up a trust, in each instance naming a trust company together with the grantor as trustees. Their issue and one of the spouses were the beneficiaries of each trust. The income of the trust was held not to be taxable to the grantor, the court rejecting the theory that he had the right to revest in himself the title to the corpus. In so far as Higgins v. White is analogous to the problem here it must be admitted that the language of the trust was more favorable to the taxpayer than that used in the trusts here involved, which permitted the trustees to advance portions of the principal to the beneficiary in such amount and for such purposes as the trustees deemed advisable. The purpose for which the principal could be paid out by the trustees in the Higgins case was certainly more limited.

■ Nevertheless, we believe the contention of the taxpayer here to be well founded. A wide discretion, it is true, was given the trustees. But although a court would not substitute its own discretion for that of the trustees, it would intervene to prevent any abuse of discretion by the trustees. See the statement of the rule and the discussion of the various situations in Restatement, Trusts § 187 and comment. Furthermore, the language used by the draftsmen in the trust instrument is not "pay" but "advance". One may not advance without paying, or at least crediting. One certainly may pay without advancing in the technical sense. The term "advance" is generally used to refer to payment of money before it is due, although it has been held to refer to a loan or even a gift. In re Harrison's Estate, 1930, 298 Pa. 514, 516, 148 A. 704, 705, and see the collection of judicial definitions in 2 Words and Phrases, Perm.Ed. 1940, p. 509 et seq. The meaning of the term is held, in a particular case, to be determined by the examination of the whole instrument in which the term is used. In re Harrison's Estate, supra; In re Altman's Will, Sur.Ct.1938, 6 N.Y.S.2d 972.

■ The instruments in the present case were drawn with some care. In disposing of remainders directions are given in many instances that a share shall be "set apart" or a portion of a share "paid" or income from a share "paid". Directions for setting apart and payment are given in considerable detail. It seems to us that where a document uses such language with such care it is not realistic to slur over such distinctions in use of terms. The Francis R. Dravo trust provided for the payment to his wife during her lifetime of so much of the net income as the trustees should determine. Then follows the provision for the "advance" of portions of the principal. We think that the fair construction of these provisions requires that the term "advance" be limited to its primary meaning of a payment before it is due. The only payments to which the wife was entitled were from income. Any funds turned over to her out of the principal would render her indebted to the trust estate for that amount and constitute a charge upon her interest in the income. We believe, also, as indicated above, that while the trustees had broad powers they, nevertheless, were required to administer the trust, even with regard to payment of corpus to the wife of the settlor, in accordance with their honest discretion. The case, in other words, seems more like Higgins v. White, supra, than it does like Lehman v. Commissioner, supra. The conclusion is, therefore, that the Board of Tax Appeals was right. The decision is affirmed.

BIGGS, Circuit Judge (dissenting).

All four trusts were executed within a few days of each other. The trust of Francis R. Dravo and that of his wife, Fanny M. Dravo, were executed on January 17, 1931; the trust of Ralph M. Dravo and the trust of his wife, Jane M. Dravo and the trust of his wife, Jane M. Dravo were executed on January 15, 1931. All four trust indentures are very similar in terms. Up to and including the end of Section 1 of Article Second, the words of the four indentures except as to names of respective creators and spouses, are identical. Each indenture contains (as the second paragraph of Section 1 of Article Second) the following clause: "The Trustees may advance portions of the principal hereof to or for the use or benefit of the

Creator's said husband [wife], at such times, in such amounts and for such purposes as the said Trustees in their opinion may deem advisable." The two Francis R. Dravo trusts provide in the section immediately following (Section 2): "After the death of the Creator's husband [wife] * * *, the Trustees shall divide the Trust Estate then remaining in their hands into three (3) equal parts * * *" for distribution in accordance with the terms of the trusts. The two other trusts provide that after the death of the designated spouse the trustees shall pay to Frank Pettit, the creators' nephew, the sum of $5,000 and then shall distribute one-third of all the stock of the Dravo Management Company (which never came into existence) and one-third of all the common stock of the Dravo Corporation "then remaining ·in the hands of the Trustees * * *", in accordance with the provisions of the trust indentures.

The respective husbands and wives transferred identical property in trust. Each trust instrument provided that the income from that trust should be paid to the spouse of the creator for life in such amounts as the trustees should determine. Francis R. Dravo and his brother, Ralph M. Dravo, and the Bank of Pittsburgh National Association were named as trustees. The bank resigned as trustee of each of the trusts and an individual trustee was then substituted. It is admitted by the petitioner and it was found by the Board that one of the controlling purposes for the formation of the four trusts was to give ultimate control of the Dravo Corporation or its constituent companies to the group of men associated with the Dravos in building up the business. None of the trusts was executed in contemplation of death.

It will be noted that each beneficiary of a trust is the creator of a trust for the benefit (at least insofar as the life estates are concerned) of his or her respective benefactor. In view of the fact that each trust for husband and wife was created simultaneously I think that we can assume that each grantor made his or her transfer in trust in consideration of the transfer of securities made by the spouse. As was stated by the Circuit Court of Appeals for the Second Circuit in the case of Lehman v. Commissioner, 109 F.2d 99, 100, Section 302(d) "* * * covers a case where

the decedent by paying a quid pro quo has caused another to make a transfer of property with enjoyment subject to change by exercise of such power [to alter, amend or revoke] by the decedent", citing 52 Harvard Law Review 1015, and Scott on Trusts, Section 156.3.[1] There is no doubt that where the grantor retains the right to effect a change in the enjoyment of the trust, through the exercise of power either alone or in conjunction with any person to alter, amend or revoke the trust, the corpus is includible in the estate of the decedent for tax purposes. Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397. If the power (to be exercised by two of the trustees for their own benefit as cestuis) vested in the trustees in the Dravo trusts to advance to each life-tenant cestui portions of the corpus of each trust is the equivalent of the right given to the life-tenant cestuis in the Lehman case to withdraw funds from the corpora of the Lehman trust, I think the corpora of the trusts sub judice are includible in the estates of the decedents and taxable as such.

In the Lehman case the decedent had the right to "withdraw" $150,000. In the cases at bar the trustees, two of whom were the Dravo brothers, had the right to "advance" portions of the corpora to each other as beneficiaries. I think that the identities of the Dravo brothers as trustees and as cestuis cannot be set apart or distinguished. They could have advanced portions of the corpora to themselves and certainly whether they did so as cestuis or trustees can have no great significance in determining the applicability of the statute under the circumstances of the case at bar.

The majority of the court are of the opinion that the word "advance" used in the trust indentures means to loan against the income due the life-tenants. No sum can become actually due to the life-tenants under the trusts because the amounts to be paid to them are left in the discretion of the trustees. The word "advance" has many meanings. It may mean to pay, to give, to loan, or to furnish, depending upon the context in which it is used. The indentures do not state that trustees may make advances against income to the life-tenants as is usually the case when such power is intended. Indeed in the cases at bar the trustees could have put the life-tenants

---

[1] "A person who furnishes the consideration for the creation of a trust is the settlor, even though in form the trust is created by another."

upon a dollar-a-year basis had they desired to do so. There is literally no limitation upon the powers of the trustees set up in the clauses relating to advances.

In the light of these circumstances the words in the Francis R. Dravo trust next following the clause relating to advances, i. e., the words to the effect that the trustees upon the death of the life-tenant shall divide all of the trust "then remaining in their hands" suggest that the sums advanced under the preceding clause were nothing more than withdrawals which the cestui was not to be charged with returning to the corpus of the trust, the trustees themselves not being surchargeable by reason of advances made negligently to a cestui unable to return an advance.

It follows that the corpus of the trust is includible in the decedent's estate for the equivalent of a right to withdraw the principal of the trust or invade its corpus is demonstrated. While the Ralph M. Dravo trust is not quite similar in form and provides for the gift to Pettit, phraseology very like that in the Francis R. Dravo trusts occurs as to the disposition of shares of stock of the Dravo Corporation "then remaining in the hands of the trustees."

I therefore conclude that the corpora of the trusts are includible in the estates of the respective decedents and that the decision of the Board of Tax Appeals should be reversed and the cause remanded for redetermination of the tax.