**STIX v. COMMISSIONER OF INTERNAL REVENUE (three cases).**

Nos. 77-79.

Circuit Court of Appeals, Second Circuit.

Dec. 21, 1945.

Harry Silverson and Charles H. Meyer, both of New York City (Meyer, Wallach & Silverson and Myron Semmel, all of New York City, of counsel), for petitioners.

Loring W. Post, Asst. Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Melva M. Graney, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

These cases come up on appeal from three orders of the Tax Court, two of which assess the petitioner, Edgar R. Stix, for deficiencies in his income tax for the years 1938, 1939 and 1940; and the third, which assesses the petitioner, Lawrence C. Stix, for deficiencies in the same years. The facts were as follows. In 1935, Lena Stix, a widow, executed two deeds of trust, conveying personal property left her by her husband; each in the amount of $200,000. The grantees and trustees in each deed were her two sons, the taxpayers, Lawrence and Edgar: one deed described Lawrence as "Primary Beneficiary"; and the the other so described Edgar. Each deed provided that during the life of the "Primary Beneficiary" the trustees were to pay all the income to him "except that the trustees may in their sole and exclusive discretion at any time, or from time to time, pay over all or any of said income to * * * the sons of the Primary Beneficiary, or either of them." They might also at any time pay over to the "Primary Beneficiary" such parts of the principal "as the trustees in their sole and exclusive discretion may consider proper." Upon the death of a "Primary Beneficiary" they were to pay the principal, or so much of it as was left, as he should designate in his will; and in default thereof, they were to divide it in

ways not relevant here. During the years in question all the income of Lawrence's trust was distributed to one of his sons, who was a minor, and all the income of Edgar's to one of his sons, who was also a minor. Each of these sons entered what he had received from his father in his tax return for the year, and paid a tax upon it; and the only question is whether the income so entered was part of the income of Lawrence and Edgar. The Tax Court—four judges dissenting—held that it was, and assessed deficiencies accordingly.

■ The words of each deed, if read literally, mean no more than that the income is given outright to the "Primary Beneficiary" during his life, and that, if he chooses to give any of it to his sons, he must get his brother's consent. If that were the meaning, it would have been so fatuous that it seems scarcely credible that the grantor should so have intended. It is possible and on the whole more rational to construe the words as imposing upon the "Primary Beneficiary" and his brother jointly a duty to make some use of the power in favor of the "Primary Beneficiary's" sons, though that duty was hedged about as far as the law would permit. Nevertheless, we agree that no language, however strong, will entirely remove any power held in trust from the reach of a court of equity. After allowance has been made for every possible factor which could rationally enter into the trustee's decision, if it appears that he has utterly disregarded the interests of the beneficiary, the court will intervene. Indeed, were that not true, the power would not be held in trust at all; the language would be no more than a precatory admonition. Collister v. Fassitt, 163 N.Y. 281, 57 N.E. 490, 79 Am.St.Rep. 586; In re Van Zandt's Will, 231 App.Div. 381, 247 N.Y.S. 441; Commissioner v. Dravo, 3 Cir., 119 F.2d 97, 100; Phipps v. Commissioner, 2 Cir., 137 F.2d 141; Restatement of Trusts § 187, Comment K; § 125. This is the interpretation of these deeds which the taxpayers assert, and we will accept it arguendo. From it they argue that, since a court would compel the exercise of the power in a proper case, the situation was the same as though the deeds had merely directed the trustees to distribute the income among several beneficiaries in such proportions as they thought best, in which event § 162(b), 26 U.S.C.A. Int.Rev.Code, would govern, and each beneficiary would be taxed only upon what he got. We may again assume for argument that this would be true, even though one of the trustees was among the class of beneficiaries. Plimpton v. Commissioner, 1 Cir., 135 F.2d 482.

■ The trusts at bar were different: a "Primary Beneficiary" did not have to await the award of the income from the trustees—himself and his brother—he had it absolutely, except as they took steps affirmatively to deprive him of it. Moreover, since they must do this jointly, each "Primary Beneficiary" could in fact continue his control so long as he could not be compelled by a court to divert any part of it to his sons. The other trustee was impotent to prevent the "Primary Beneficiary" from giving away any part of the income which he might wish to give; and the other trustee was equally impotent to force the "Primary Beneficiary" to give any part which the "Primary Beneficiary" did not wish to give. Thus, the situation was exactly the same as though the whole income had been given to each "Primary Beneficiary" for life with a power in trust for his sons to give them what in his discretion he might think proper. Such a power limited absolute control over the income, only in those extreme instances when the "Primary Beneficiary" might be guilty of such gross and callous disregard of his sons' necessities, compared with his own needs and resources, that a court could be induced to compel him to give them some measure of relief. What such occasions might be, when they would arise, whether they would ever arise at all, how much he would then be compelled to give if they did: all these were matters inevitably left uncertain. Quite aside from whether a control, so little fettered, should ever be regarded as less than absolute, when taxes are in question, the taxpayers at bar failed to carry their burden of proof, for they did not show what part of the income they could have been compelled to pay to their sons; and how much, therefore, was not within absolute control. As we have said, in the years in question all of the income of both trusts was given to one son of each taxpayer who was a minor, and for whose maintenance and support his father was still liable. As much as was needed to discharge that obligation was part of the father's income. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 77 L.Ed. 154. However, in order to avoid further litigation, we do not limit our ruling to that situation:

neither taxpayer could escape taxation upon the whole income unless he showed, not only what he in fact gave to his sons, but what was the minimum which a court would have compelled him to give, above the measure of his paternal obligation. All else he might withhold, and whatever more he chose to give, he gave out of his own. Whether the deeds were more than a contrivance to avoid surtaxes we cannot know, but, judged on their face, they appear : strangely suited to that purpose.

Orders affirmed.