ESTATE OF WILLARD V. KING, DECEASED, THE CHASE MANHATTAN BANK, FORMERLY THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78430. Filed February 21, 1962.

*John L. Gray, Jr., Esq.*, and *Howard Carter, Jr., Esq.*, for the petitioner.

*William F. Fallon, Esq.*, for the respondent.

OPINION.

ATKINS, *Judge:* The respondent determined a deficiency in estate tax in the amount of $341,369.15 which resulted from several adjustments made by him, but principally from the inclusion in the decedent's gross estate, at a value of $795,395.02, of assets of three trusts which the decedent had created during his lifetime. By agreement between the parties all issues have been settled except that relating to the respondent's inclusion of the amount of $795,395.02 in the gross estate, and the amount of additional deductions for expenses of administration incurred subsequent to the filing of the estate tax return. It has been agreed that the amount of deductible administration expenses

will be determined in connection with the recomputation under Rule 50.

The facts have been stipulated and are so found. They are set forth herein to the extent necessary to an understanding of the case.

Willard V. King died testate on May 1, 1955, a resident of Convent, New Jersey, leaving three surviving children, Willard V. King, Gordon V. King, and Mary King Ruhtenberg. An estate tax return was filed by the executor with the district director of internal revenue, Newark, New Jersey, on July 16, 1956.

All of the decedent's professional life was spent in the banking business, with specialization in the investment field. Among the positions he held were vice president of the New York Trust Company from 1903 to 1909, president of the Columbia Trust Company from 1909 until 1923 (at which time a merger took place with Irving Bank), and a director of Irving Bank-Columbia Trust Company from the time of the merger through 1926. He was also a trustee of New York Life Insurance Company from 1912 to 1915 and a director of that company from 1915 until 1952. He was a member of that company's finance committee from 1912 to 1931. He was a trustee of Columbia University for many years, serving on its finance committee for 14 years at various periods between 1910 and 1934. The duties of the above finance committees included the supervision and making of all investments. Decedent retired from active business in 1928.

On December 31, 1935, decedent executed a trust indenture with the Chase National Bank of the City of New York (now the Chase Manhattan Bank) as sole trustee, stating therein that he desired to create an irrevocable trust. Under the trust indenture three trusts were created, one for each of decedent's above-named three children. At that time the decedent transferred to the trustee as original corpus of the three trusts certain stocks and bonds having a value at that time of $199,990. The trusts' holdings of each of these securities and each of the securities subsequently purchased by the trustee during decedent's life were at no time significant from the point of view of control of the particular companies involved.

Under the terms of the trust indenture 38 percent of the assets was set aside for the trust for Mary King Ruhtenberg, 31 percent was set aside for the trust for Willard V. King, and 31 percent was set aside for the trust for Gordon V. King. Each such beneficiary was to receive the income of his trust for life and upon his death the principal was to be paid in equal parts to the children of such life beneficiary (or to the issue of any children), per stirpes. If the life beneficiary should die leaving no issue surviving then the trustee was to pay over the principal of that trust in equal parts to the surviving sister, brother, or brothers of the life beneficiary or to his or her issue per stirpes. Should the life beneficiary die leaving no brother or sister

or issue of any brother or sister surviving him or her, then the trustee was directed to pay the principal of the trust according to the will of the life beneficiary, or if there should be no will, or if the life beneficiary failed to exercise the power of appointment, then the principal was to be paid to the intestate heirs of the life beneficiary. The indenture further provided that should the grantor, by reason of the laws of intestacy, be entitled to any share of the trust, he renounced such right and directed that such share be given to the other legal heirs of the life beneficiary or if there should be none, then to the trustees of Columbia University.

Article Second of the indenture provides as follows:

Subject to the limitation hereinafter contained in this Article, the Trustee, in addition to the powers vested in fiduciaries by law, shall have the following powers:

(a) To hold and retain the securities and other property received by the Trustee without liability of any kind by reason of such holding or retention.

(b) To purchase or subscribe for any securities or other property with any moneys at any time held by it in the principal of the Trust Estate or to retain such moneys in the form of cash.

(c) To sell, lease, mortgage or otherwise dispose of all or any part of the securities or other property which may at any time comprise the Trust Estate; and to make sales of the said securities and other property at either public or private sales at such prices and on such terms as the Trustee may determine and to make, execute, acknowledge and deliver to the purchasers thereof good and sufficient deeds of conveyance therefor and all assignments, transfers or other legal instruments either necessary or convenient.

No purchasers upon any sale by the Trustee shall be bound to see to the application of the purchase money arising therefrom or to inquire into the validity, expediency or propriety of any such sale.

(d) To register any securities or other property in the name of the Trustee or of a nominee or nominees or to take and keep the same in bearer form.

(e) To vote in person or by proxy upon all securities or other property held by it, and to execute and deliver all necessary proxies and powers of attorney.

(f) To join in or become a party to any agreement or reorganization, readjustment, merger, consolidation or exchange, to deposit any such securities or other property thereunder, to exchange any stocks, bonds, securities or other evidences of indebtedness for other stocks, bonds, securities or evidences of indebtedness, to exercise any conversion privileges or to exercise rights to subscribe to new securities, and to pay and charge the principal or the income of the trust, whichever in its opinion shall be appropriate, for any sums which may be required thereby, and to receive and hold any new securities or other property, including real estate or an undivided interest in real estate, issued or allotted as a result thereof.

(g) To borrow funds when advisable for the benefit of the Trust Estate and to pledge any of the assets of the Trust Estate as collateral for the payment of any such loans.

(h) To do generally all and every other act as in its good judgment shall seem to be for the benefit of the Trust Estate.

Anything herein contained in this Article Second to the contrary notwithstanding, the powers set forth in the sections lettered (a), (b), (c), (e), (f), (g) and (h) of this Article Second may be exercised by the Trustee during the

lifetime of the Grantor only as, if and when directed in writing to do so by the Grantor. It shall be the duty of the Trustee to act strictly in accordance with such directions and the Trustee shall be under no liability, responsibility or accountability for any loss of any kind which may result by reason of any action taken by it in accordance with any such direction or by reason of its failure to exercise any power given to it hereby because of the failure of the Grantor to give such direction, it being the intention of the Grantor that with respect to the exercise or nonexercise of said powers, the Trustee shall be under no duty whatsoever, except to act in accordance with such directions.

The phrase "securities or other property" as used in this agreement, shall be deemed to refer to mortgages, real estate, stocks, either common or preferred, bonds, notes or other securities and any other property of whatsoever kind and nature, although the same may not be legal investments for a trustee under the laws applicable hereto, and even though speculative, extrahazardous and unproductive. The Trust Estate may be constituted entirely of preferred stock, or of the common and/or preferred stock, bonds, securities or other evidences of indebtedness of any one corporation, and securities or other property may be acquired with a view to the future increase of the principal. After the death of the Grantor the Trustee is authorized to retain any securities or other property held by it at the time of his death.

Article Third provides in part that "Insofar as permitted by law, all stock dividends and liquidating dividends which shall be received by the Trustee hereunder shall be added to principal and no portion thereof shall be distributed to the beneficiaries of the income." It further provides that "All other cash dividends shall be deemed income and distributed as such."

Article Tenth provides that "Any and all income including accrued interest and regular cash dividends declared but unpaid which may have accrued on securities or other property transferred to the Trustee in pursuance of any provision hereof at the time of delivery thereof shall be considered as income and disposed of as such."

The indenture provides in Article Twelfth that the trust instrument is made under and is to be construed, interpreted, and given effect in accordance with the laws and statutes of the State of New York. It provides in Article Fourteenth that the trustee shall have the right to resign at any time and that in such event the grantor shall appoint a new trustee to act in its place and stead.

At the time of the creation of the three trusts the ages of the named income beneficiaries were: Willard V. King, 30 years; Gordon V. King, 25 years; and Mary King Ruhtenberg, 28 years.

At the time of the death of the decedent his son Willard V. King had two children, aged 7 and 2; his son Gordon V. King had two children, aged 16 and 13; and his daughter Mary King Ruhtenberg had two children, aged 24 and 19.

During the lifetime of the decedent 8 sales of securities aggregating $89,921.84 and 16 purchases aggregating $107,865.48 were made on behalf of the three trusts. Each trust had gross income in each of the years 1936 through 1955 ranging from about $3,500 in 1936 to about

$9,200 for 1955 in the Willard V. King trust, from about $3,500 in 1936 to about $9,500 for 1955 in the Gordon V. King trust, and from about $4,300 in 1936 to about $11,500 for 1955 in the Mary King Ruhtenberg trust.

At the date of the death of the decedent, May 1, 1955, the aggregate fair market value of the principal of the three trusts was $792,509.20. The value of the corpus of each of the trusts at the end of 1936 (1 year after the creation of the trusts) and at the time of the death of the decedent was as follows:

|  | Value at Dec. 31, 1936 | Value at May 1, 1955 |
|---|---|---|
| Willard V. King trust | $71,256 | $241,620.38 |
| Gordon V. King trust | 69,847 | 248,888.44 |
| Mary King Ruhtenberg trust | 85,619 | 302,000.38 |
| Total | 226,722 | 792,509.20 |

In the estate tax return filed by the executor, although the existence of the trust indenture was reported in Schedule G, no value was included in the gross estate on account of the three trusts created thereby.

In the notice of deficiency the respondent determined that the aggregate value, as of the date of death, of the assets of three trusts created on December 31, 1935, was $795,395.02, and he increased the value of the gross estate by that amount on the ground that "the decedent reserved rights to control the enjoyment of the income" from such trusts during his lifetime.

On brief the respondent contends that due to the broad powers retained by the grantor, the value of the principal of each trust is includible in the gross estate under the provisions of sections 2036(a)(2) and 2038 of the Internal Revenue Code of 1954.[1]

---

[1] Section 2036 provides in part as follows:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

Section 2038 provides in part as follows:

SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

* * * * * *

(2) TRANSFERS ON OR BEFORE JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. * * *

Here the trust was, by the terms of the indenture, irrevocable, and the indenture clearly defined the persons who were to receive whatever income might be derived upon the trust property and the persons who were to take whatever trust corpus might be in existence at the end of the life estates. The grantor did not specifically retain the right either alone or in conjunction with any person to designate the person who should possess or enjoy the property or the income therefrom. Literally, therefore, it would seem that section 2036 would not operate to require the inclusion of the trust property in the gross estate.[2] Furthermore, the grantor did not specifically reserve any power either alone or in conjunction with any person to alter, amend, or revoke any provision of the trust indenture relating to the enjoyment of the property, and it would seem that section 2038, literally, would have no application.

However, on brief the respondent contends that since in the indenture the grantor retained for his life the right to direct the trustee with respect to the management and investment of the trust property and retained the right to direct the sale of any properties and the reinvestment in any type of property which he might determine, even though speculative, extrahazardous, and unproductive, the grantor had retained the power to increase the interests of the life income beneficiaries to the detriment of the remaindermen, or vice versa. He contends that the decedent could require the investment of the entire trust estate in unproductive securities, thereby eliminating any payments to the life beneficiaries, or conversely, could require that the estate be invested entirely in high-yield though extrahazardous securities, and thereby dissipate in whole or in part the corpora of the trusts so that the remaindermen would ultimately receive little or nothing. It is his position that the right thus retained by the grantor constituted a right to designate the persons who should possess or enjoy the property or the income therefrom, within the meaning of section 2036(a)(2), inasmuch as it permitted him to shift the economic benefits of the corpora of the three trusts. He also contends that since the grantor could direct the trustee to sell, lease, mortgage, or "otherwise dispose of" all the trust property, he retained the right to dispose of the property for little or no consideration; that since he could cause the assets of the trusts to be sold at either public or

---

[2] Section 20.2036–1 of the Estate Tax Regulations provides in part as follows:

(3) The phrase "right * * * to designate the person or persons who shall possess or enjoy the transferred property or the income therefrom" includes a reserved power to designate the person or persons to receive the income from the transferred property, or to possess or enjoy nonincome-producing property, during the decedent's life or during any other period described in paragraph (a) of this section. * * * The phrase, however, does not include a power over the transferred property itself which does not affect the enjoyment of the income received or earned during the decedent's life. (See, however, section 2038 for the inclusion of property in the gross estate on account of such a power.) * * *

private sales at such prices and on such terms as he might determine, he could direct the trustee to sell the trust estate to him; that since he could direct the trustee to exchange securities for other securities or property, he had the unlimited right of substitution of assets of unequal value; that all these retained powers require inclusion of the trust property in the gross estate under section 2036(a)(2); and that all these retained powers also bring the case within the ambit of section 2038.

It is the respondent's contention that since these rights were specifically retained by the grantor in the trust indenture, any action he might cause to be taken would not be subject to the control of the equity courts of the State of New York. His main reliance is upon *State Street Trust Co.* v. *United States*, (C.A. 1) 263 F. 2d 635, affirming 160 F. Supp. 877.

The petitioner, on the other hand, contends that such powers as were retained by the grantor were exercisable only in a fiduciary capacity, subject to the scrutiny of a court of equity; that under New York law the grantor was under a duty to act impartially as between successive beneficiaries; that, therefore, he did not retain any right to designate the persons who should possess or enjoy the property or the income therefrom, within the meaning of section 2036(a)(2); and that the enjoyment of the property was not subject to any change through the exercise of a power to alter, amend, or revoke, within the meaning of section 2038.

The trust indenture provides that it is made under and is to be construed, interpreted, and given effect in accordance with the laws and statutes of the State of New York. In *Carrier* v. *Carrier*, 226 N.Y. 114, 123 N.E. 135, the Court of Appeals of New York had under consideration trust provisions somewhat analogous to those involved herein. There the grantor of the trust retained for life the power to direct the trustee as to investment and management of the fund, and it was provided that his discretion should be absolute and uncontrolled. The court held that the grantor was in effect the trustee since the duties of the trust company were merely formal, and stated:

It is true that the creator of this trust had reserved to himself the broadest rights of management. His discretion was to be "absolute and uncontrolled." That does not mean, however, that it might be recklessly or willfully abused. He had made himself a trustee; and in so doing he had subjected himself to those obligations of fidelity and diligence that attach to the office of trustee. He had power to "invest" the moneys committed to his care. He had no power, under cover of an investment, to loan them to himself. His discretion, however broad, did not relieve him from obedience to the great principles of equity which are the life of every trust. * * *

See also *Osborn* v. *Bankers Trust Co.*, (Sup. Ct.) 5 N.Y.S. (2d) 211. And in *Stix* v. *Commissioner*, (C.A. 2) 152 F. 2d 562, affirming 4 T.C. 1140 (a case involving income tax rather than estate tax), it was stated:

Nevertheless, we agree that no language, however strong, will entirely remove any power held in trust from the reach of a court of equity. After allowance has been made for every possible factor which could rationally enter into the trustee's decision, if it appears that he has utterly disregarded the interests of the beneficiary, the court will intervene. Indeed, were that not true, the power would not be held in trust at all; the language would be no more than a precatory admonition. *Collister* v. *Fassitt*, 163 N.Y. 281, 57 N.E. 490, 79 Am. St. Rep. 586; *In re Van Zandt's Will*, 231 App. Div. 381, 247 N.Y.S. 441: *Commissioner* v. *Dravo*, 3 Cir., 119 F. 2d 97, 100; *Phipps* v. *Commissioner*, 2 Cir., 137 F. 2d 141; Restatement of Trusts § 187, Comment K; § 125. * * *

It is our conclusion that insofar as the management of the trust in the instant case was concerned, the grantor had in effect made himself a fiduciary, and that under the law of New York he was not at liberty to administer the trust for his own benefit or to ignore the rights of the beneficiaries, even though he no doubt would be permitted wide latitude in the exercise of his discretion as to the types of investments to be made.

Under the trust indenture all stock dividends and liquidating dividends were to be added to principal and no portion thereof distributed to the beneficiaries of the income; all other cash dividends were to be deemed income and distributed as such; and any investments in securities or other property were to be made only out of principal of the trust estate. There was, therefore, no retained right or power in the decedent to divert any of the corpus to the income beneficiaries or to divert any income to the remaindermen. Corpus and income were to go in accordance with the provisions made in the indenture, and there was no provision in the indenture whereby the decedent might alter, amend, or revoke the trust.

Under these circumstances we think that although the decedent, under his broad discretionary powers with respect to investment, might invest in properties producing either a high or a low return of income, such powers would have to be exercised in good faith in accordance with his fiduciary responsibility and could not be used for the purpose of attempting to favor any beneficiary or class of beneficiaries to the detriment of the other beneficiaries. It is our conclusion that the right retained by the grantor was not the right to designate the persons who should possess or enjoy the property or the income therefrom within the intendment of section 2036(a)(2).

The case of *State Street Trust Co.* v. *United States, supra*, cited by the respondent, is distinguishable from the instant case in that the grantor retained far greater powers than were retained in the instant case. There the grantor, as cotrustee, in addition to having broad powers with respect to investment, had the power to determine, without limitation, which trust assets, accretions, and receipts should be allocated to corpus or income, to make deductions from income for

depreciation, amortization, or waste in whatsoever amounts he saw fit, and generally to do all things in relation to the trust fund which he could have done had the trust not been executed.

We have heretofore held that the retention by the grantor of a trust of the right to direct the trustee to invest and reinvest the trust property in such manner as the grantor might direct does not amount to the retention of a power to alter, amend, or revoke, within the meaning of the provisions of prior revenue Acts corresponding to section 2038 of the Internal Revenue Code of 1954. *Estate of Henry S. Downe*, 2 T.C. 967 (petition for review (C.A. 2) dismissed); *Estate of George W. Hall*, 6 T.C. 933; and *Estate of John W. Neal*, 8 T.C. 237. It is accordingly our conclusion that the enjoyment of the trust property was not subject, at the date of the decedent's death, to any change through the exercise of a power by the decedent to alter, amend, or revoke, within the meaning of section 2038.

We hold that the respondent erred in including the value of the assets of the trusts in the gross estate.

*Decision will be entered under Rule 50.*