Estate of Arthur A. Chalmers, Deceased, Harvey Chalmers, 2nd and Richard D. Kearns, Co-Executors v. commissioner.
Estate of Chalmers v. Commissioner
Docket No. 4569-70.
United States Tax Court
T.C. Memo 1972-158; 1972 Tax Ct. Memo LEXIS 100; 31 T.C.M. (CCH) 792; T.C.M. (RIA) 72158; July 27, 1972
*100 Held: A power reserved by the grantor, in conjunction with the trustees, to direct the investment of the trust corpus did not constitute either (1) the right to designate the persons who shall possess or enjoy the property or the income therefrom within the meaning of sec. 2036(a)(2) or (2) the power to alter, amend, revoke or terminate the trust within the meaning of sec. 2038(a)(1). Jacob H. Herzog and William J. Polen, 11 N orth Pearl St., Albany N. Y., for the petitioners. Rudolph J. Korbel and Barry Gordon, for the respondent. 793 QUEALY
Opinion QUEALY, Judge: In this proceeding the Commissioner has determined a deficiency in the estate tax of the petitioners in the amount of $394,542.44. The petitioners contest that determination. The sole question for decision is whether two inter vivos trusts created by the decedent, known as the "Cooper trust" and the "Mills trust" are includable in the taxable estate of the decedent under the provisions of section 2036(a)(2) or section 2038(a)(1). [1]
The matter was submitted upon a stipulation of facts pursuant to Rule 30 of the Tax Court Rules of Practice.
The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The decedent died on April 2, 1966, a resident of Fulton County, New York. Harvey Chalmers, 2nd, and Richard D. Kearns were duly appointed executors of his estate. The petitioners filed a Federal estate *102 tax return for the estate with the district director of internal revenue, Albany, New York. Harvey Chalmers, 2nd, died on October 6, 1971. At the time of the filing of the petition herein, the legal residence of Richard D. Kearns was Broadalbin, New York. On October 26, 1936, the decedent, as grantor, entered into a trust indenture, herein referred to as the "Cooper trust"with Marion F. Chalmers, Martha Chalmers Mills, Louisa Chalmers Mills, and Harvey Chalmers, 2nd, the children of the decedent, and Edward Cooper, as trustees. The income of the trust was payable one-fourth to each of the four children so long as they lived, with provision for the payment of their respective shares of the income either to the surviving children of the decedent or to the children of the deceased child of the decedent in the event any of them should predecease the grantor. Upon the death of both Marion F. Chalmers and Louisa Chalmers Mills, the trust would terminate and the corpus would be distributed equally among the grandchildren of the grantor then living. Under the terms of the Cooper trust, the trustees were authorized to change the investments of the trust "without regard to their legality *103 for the investment of trust funds under the laws of the State of New York" subject to certain specific limitations. The trust further provided as follows: NINTH: During the lifetime of the Grantor, and with the unanimous approval of the Trustees, the terms and conditions of this agreement in reference to the character, form and manner of investment of the trust funds may be changed or modified. Acting pursuant to the foregoing, the trust indenture was amended by indenture dated September 22, 1941, in which the grantor and the trustees joined, setting forth a plan of investment of the trust assets. The amendment further provided that after the death of the grantor, and after the form and plan of investment had been diligently followed for at least 5 years, the trustees by unanimous vote could modify the plan of investment. A further modification was executed on November 6, 1942, whereby the affirmative objections of two trustees was required to bar changes in investment by the trustees in lieu of unanimity. On May 31, 1918, the decedent, as grantor, created a trust for the benefit of his daughter, Louisa Chalmers Mills, designating the Motgomery County Trust Co. as trustee. The *104 income of that trust was to be paid to Louisa Chalmers Mills during her lifetime, and upon her death, the principal would be distributed to her children then living, and the issue of any deceased child per stirpes. In the event no issue survived Louisa Chalmers Mills, the principal would revert to the grantor if living, or to his estate. Said trust indenture provided that during the lifetime of the grantor the corpus of the trust shall not be sold and the proceeds reinvested without the consent in writing of the grantor. Thereafter by indenture dated October 24, 1941, the decedent entered into a trust indenture, herein referred to as the "Mills trust," with Marion F. Chalmers, Louisa Chalmers Mills, Allison C. Mills, Martha Chalmers Mills, Harvey Chalmers, 2nd, and Edward Cooper, as trustees. The income of that trust was to be paid over during the lifetime of Louisa Chalmers Mills to the Montgomery County Trust Co., as trustee, under the trust indenture of May 31, 1918. Upon the death of Louisa Chalmers Mills, the principal of the Mills trust was distributed in the same manner as the May 31, 1918 trust. 794 Under the terms of the Mills trust, the trustees were authorized to *105 change the investments "without regard to their legality for the investment of trust funds under the laws of the State of New York" subject to certain limitations. The trust indenture provided with respect to such limitations or plan of investment that 5 years after the death of the grantor the trustees, acting together and by unanimous vote, may modify or adopt such plan of investment as they shall unanimously agree upon. Finally, the trust indenture provided that during the lifetime of the grantor, the terms and conditions of the trust indenture in reference to the character, form, and manner of investment of the trust fund could be changed and modified by the trustees, acting presumably in concert with the decedent. In his notice of deficiency, the respondent determined that the powers reserved by the decedent with respect to the investments of the Cooper trust and the Mills trust constituted the power to alter, amend or revoke within the meaning of section 2038. On brief, the respondent further stated that such powers constituted the right to designate the person who shall possess or enjoy the property or the income therefrom within the meaning of section 2036(a)(2). We are unable *106 to read into these trusts the reservation or exercise of "broad administrative powers" by the decedent upon which the respondent rests his case. As a matter of fact, whatever powers the decedent may have exercised with respect to the trusts fell far short of the power to regulate the flow of income as between the life beneficiaries and the remainder interests. When we look to the trust indenture of the Cooper trust and the Mills trust, as amended and modified, the intent of the grantor is clear. In the creation of these trusts, the decedent sought to lay down certain guide lines for the investment of the trust funds. From time to time, by unanimous agreement among the trustees and the decedent, as grantor, changes were made in the plan of investment of the trust funds and the required unanimity on a part of the trustees was changed so as to provide authority for a majority of the trustees to act in the absence of an affirmative objection by at least two of their fellow trustees. Unquestionably, the decedent sought to exercise some degree of direction and control over the type of investments made by the trusts. It is equally clear, however, that such control was not intended as a *107 means of enabling the decedent to revoke or to shift the beneficial interest or enjoyment of the trusts as between the life beneficiaries and the remainder interests, including a reversion to the estate of the decedent in the case of the Mills trust. The same issues presented by this case were before the Court in the Estate of Willard V. King, 37 T.C. 973 (1962). This Court decided that the retention by the grantor of a power to direct or to control the investment of the trust property did not constitute either (1) the right to designate the persons who should have the right to enjoy the property or the income therefrom within the intendment of section 2036(a)(2) or (2) the power to alter, amend or revoke within section 2038(a)(1). More recently, the Supreme Court adopted and affirmed our opinion in Estate of Willard V. King, supra.United States v. Byrum, - U.S. -, decided June 26, 1972. We regard these cases as determinative of the issues before us. [2]
In the Byrum case, the Supreme Court restated the rule that trust *108 property need not be included in the grantor's estate solely because the grantor retained the power to manage the trust assets. In so doing, the Supreme Court specifically approved proved the decision of this Court in Estate of Willard V. King, supra, wherein we held that notwithstanding the reservation of discretion on the part of the grantor as to the investment of the trust property, such control over the flow of income was not equivalent to the power to designate who shall enjoy the income from the trust. While the facts in the Byrum case may be dissimilar to the facts before this Court, it is controlling here. We must therefore, find for the petitioners with respect to both the Cooper trust and the Mills trust. In order to reflect the concessions made by the parties with respect to other issues, Decision will be entered under Rule 50. 795 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Although respondent was cognizant of the Byrum case, respondent's reply brief filed on July 14, 1972, fails to mention that case.↩